THE PEOPLE OF THE STATE OF NEW YORK ex rel. DOROTHY KNIFFIN, Relator, against RICHARD A. KNIGHT, Defendant.

Supreme Court, Special Term, New York County, March 20, 1945.

*Gordon, Brady & Keller* for relator.

*Richard A. Knight,* defendant in person.

HECHT, J. Relator and defendant were married in this State on November 2, 1932. The issue of that marriage consists of two daughters aged nine and seven respectively. At the time of their marriage and continuously until the present, relator, defendant and the children were domiciled in this State, except that relator acquired a residence in Nevada for a short period in 1943. On March 1, 1943, the Supreme Court of Nevada granted relator a final decree of absolute divorce from defendant. The jurisdiction of the Nevada court was based upon relator's residence there and upon personal service of process on defendant in Nevada. The decree granted the sole and exclusive care, custody and control of the two children to relator.

After obtaining this decree, relator returned to this State, where she and the children and defendant have resided since. On several occasions relator has permitted the children to visit defendant. The last such occasion was February 2d, of this year, when they were taken to defendant's residence at 7 East 96th Street, Borough of Manhattan. Defendant had promised to return the children by February 4th, but failed to do so. On February 8th relator's attorneys wrote to defendant, advising him that unless the children were returned to the care of relator on February 12th, they would institute appropriate proceedings. Defendant sent a letter in reply on February 9th acknowledging receipt of the letter but did not return the children. On February 13th this court issued a writ of habeas corpus directed to defendant requiring him to produce the children.

The writ was turned over to a deputy sheriff named Hanley for service. He made an affidavit stating the following facts: On February 14th at 11:30 A.M. he visited defendant's home at 7 East 96th Street. "The door was opened by the maid, who said that Mr. Knight was not at home at the present time but that she expected him later in the evening. I left my card and requested that Mr. Knight get in touch with me at my office in regard to a personal matter." He returned at 8 P.M. but found both doors closed and received no response when he rang the bell. The maid subsequently advised Hanley that she had given his card to defendant that evening. On February 15th Hanley received a call from defendant's secretary requesting information as to the nature of the matter which he wished to discuss with defendant. Hanley thereupon gave her complete information as to the nature of the process, whereupon she said she would inform defendant and call Hanley back before 4 P.M. regarding an appointment. Upon her failure to do this, Hanley visited the house again at 5 P.M. The door was opened by the secretary, who stated that defendant was not in and that she did not know his whereabouts. Hanley visited the house again on February 16th at 10 A.M. and at 8 P.M. No answer was received on the first occasion; on the second, the door was opened by a man who identified himself as the caretaker, and who stated that defendant was not in

On February 17th at 10 A.M. Hanley made another visit. The door was opened by the maid who stated there was nobody home. On that day, relator's attorneys sent a telegram and a registered letter to defendant's home, advising him that the writ had been issued requiring him to produce the children, that the deputy sheriff had been unable to effect personal service on a number of visits " and that unless you make yourself available for service of the writ, we shall effectuate substituted service."

Hanley made another visit on February 18th, but received no response to the bell. He tried again on February 19th at 2:45 P.M. when he was informed by the maid that defendant was not at home. At 3:30 P.M. of the same day, which was a Monday, defendant's secretary sent a telegram to relator's attorney reading as follows: " In answer to your wire of Saturday and your letter received by me this morning, addressed to Mr. Richard Knight, I have to say that Mr. Knight is not and has not been evading service of process as he has been out of the state for the past two weeks and is expected to be away indefinitely."

On February 20th at 2 P.M. Hanley rang the bells at the front and rear entrances to defendant's residence without receiving any response, though he could hear the bell ringing in the house and he could see a number of lighted lamps therein. At 2:15 P.M. " I securely affixed a copy of the writ and the petition in a conspicuous place on the outside of the dwelling house, to wit, the door to the house in which the respondent resides." He immediately called the house on the telephone first receiving a busy signal and finally speaking to the secretary at 2:30. She stated that she had arrived about a half hour previous. " I asked whether Mr. Knight was there and she said that he was not and his whereabouts were unknown. I asked her to open the door so I could give her a copy of the writ. This she refused to do, and stated that Knight has instructed her to refuse any papers in his behalf." Hanley then returned to the house, and left two additional copies of the writ, one under the front door and one under the rear door.

Relator has made an affidavit sworn to February 21st, the day after Hanley served the writ in the above-described manner. In this affidavit she states that since the commencement of the proceeding she has heard from defendant by letter, by telegram and by telephone, and he stated his purpose was to continue to evade service and to keep the children concealed unless she would agree to his terms relative to their custody. As will hereinafter appear, defendant admits having sent relator a proposed agreement (dated February 20th) affecting the custody of the children, which he asked her to sign. Relator avers further that she has not heard from her children and is unable to communicate with them; that she has been in constant touch with defendant's secretary who has refused to disclose the whereabouts of either defendant or the children, but stated that defendant had full knowledge of the issuance of the writ and of the efforts which have been made to effect service upon him.

Defendant failed to appear on the return date of the writ of habeas corpus, and his default was duly noted. Thereupon an order was issued requiring defendant to show cause why he should not be adjudged guilty as for a contempt of court for his failure to make a return to the writ and to produce the infants. Copies of such order to show cause were delivered to defendant's secretary at her home on February 22d, mailed to defendant's residence on the 23d, and left with the housekeeper at such residence on the 24th. On this latter day defendant addressed a letter to this court from Jacksonville, Florida, which he acknowledged before a notary public but which he

states is not to be construed as an appearance by him. In this letter he states he is informed of the issuance of the foregoing order to show cause, and his letter indicates a detailed familiarity with the contents of the affidavits which were annexed to such order. He states that he departed from this State more than a week prior to the issuance of the writ of habeas corpus and has not been here since, and that he had advised relator of this fact over the long distance telephone prior to the issuance of the order to show cause. Defendant contends in this letter that changed circumstances since the rendition of the Nevada decree make it necessary in the interests of the children that a change be made in the arrangements for custody. He encloses a copy of the agreement dated February 20th which he requested relator to sign. This provides that the children are to live with defendant until June 1st; that during such period, the parties should make an effort to come to an agreement in reference to the permanent custody of the children, and if that fails, to submit the matter to arbitration before a person agreeable to both parties, " whose decision shall be binding on us both."

Section 1242 of the Civil Practice Act provides in part: " If the person upon whom the writ [of habeas corpus] ought to be served keeps himself concealed or refuses admittance to the person attempting to serve it, it may be served by affixing it in a conspicuous place on the outside * * * of his dwelling-house ". The facts relating to the attempt to serve the writ of habeas corpus herein have been narrated at some length because the question of whether the person upon whom it is sought to effect service " keeps himself concealed or refuses admittance to the person attempting to serve it " depends upon all the facts in each particular case. The court is satisfied that relator has made out a prima facie case to justify the employment here of substituted service of the writ as permitted by the statute. Since the form of substituted service provided for and employed " is reasonably calculated to give him actual notice of the proceedings and an opportunity to be heard. * * * the traditional notions of fair play and substantial justice * * * implicit in due process are satisfied " (*Milliken* v. *Meyer,* 311 U. S. 457, 463, rehearing denied, 312 U. S. 712). " As in case of the authority of the United States over its absent citizens (*Blackmer* v. *United States,* 284 U. S. 421), the authority of a state over one of its citizens is not terminated by the mere fact of his absence from the state. The state which accords him privileges and affords protection to him and his property by virtue of his domicile may also exact reciprocal duties. * * * The

responsibilities of that citizenship arise out of the relationship to the state which domicile creates. That relationship is not dissolved by mere absence from the state. \* \* \* The attendant duties, like the rights and privileges incident to domicile, are not dependent on continuous presence in the state. One such incident of domicile is amenability to suit within the state even during sojourns without the state, where the state has provided and employed a reasonable method for apprising such an absent party of the proceedings against him." (*Milliken* v. *Meyer, supra,* pp. 463–464.)

No valid excuse is or can be offered for defendant's willful disobedience of this writ of habeas corpus, and his detention of the children outside of the State in order to prevent their production as commanded by the writ. If he wishes to adduce any facts or circumstances to indicate that any change should be made in the present arrangements for custody of the children, a full opportunity to do so may be afforded to him on the return of the writ. Since the children are citizens of New York (*Matter of Thorne,* 240 N. Y. 444), the Nevada decree has not " diminished the prerogative of the New York Supreme Court as *parens patriæ.* By means of that paternal jurisdiction the court was to provide for the best interests of the children after the manner of a wise, affectionate and prudent parent " (*People ex rel. Herzog* v. *Morgan,* 287 N. Y. 317, 320).

The Supreme Court will not hesitate either to modify or completely alter the custody provisions of the Nevada decree if it becomes satisfied that this will best serve the children's welfare. (*Matter of Young* v. *Roe,* 265 App. Div. 858, affd. 290 N. Y. 823; *Matter of Bull* [*Hellman*], 266 App. Div. 290; cf. *People ex rel. Winston* v. *Winston,* 65 App. Div. 231, with *People ex rel. Ludden* v. *Winston,* 34 Misc. 21, affd. 61 App. Div. 614.) Any such custody decree made by this court will be *res judicata* in every other State, since the parties all reside here. (*People ex rel. Tull* v. *Tull,* 245 App. Div. 508, affd. 270 N. Y. 619; *Matter of Standish,* 197 App. Div. 176, affd. 233 N. Y. 689.)

If defendant was really concerned that the best interests of the children were not being served by the custody provisions of the Nevada decree, he would not seek to compel a change in those provisions by the highhanded method he has employed, nor demand that the children's custody be determined by an arbitrator " whose decision shall be binding on us both." He would submit that matter for determination after a full hearing by this court, which has succeeded to the historic remedy of the chancellors' prerogative, described by Judge CARDOZO in *Finlay*

v. *Finlay* (240 N. Y. 429, 434): "He is not adjudicating a controversy between adversary parties, to compromise their private differences. He is not determining rights ' as between a parent and a child ' or as between one parent and another * * *. He ' interferes for the protection of infants, *qua* infants, by virtue of the prerogative which belongs to the Crown as *parens patriæ* ' ".

Instead, defendant seeks to frustrate any such disposition by keeping the children out of the jurisdiction of the court, which is powerless to make an order determining their custody in this habeas corpus proceeding unless they are brought within its power and control as commanded by the writ. (*Matter of Meyer,* 209 N. Y. 59; *People ex rel. Winston* v. *Winston,* 31 App. Div. 121, 124.)

This is a case, therefore, to which the words of Chief Justice KENT are particularly applicable when he says that the writ of habeas corpus " has justly been deemed the glory of the *English law* * * *. Nor can we hesitate in promptly enforcing a due return to the writ, when we recollect that, in this country, the law knows no superior; and that in *England,* their courts have taught us, by a series of instructive examples, to exact the strictest obedience " (*Matter of Stacy,* 10 Johns. 328, 333).

The question remains as to the proper remedy to command obedience to the writ. Relator is proceeding under article 19 of the Judiciary Law, relating to contempts. I have concluded that the exclusive procedure in a case like this is that specified in article 77 of the Civil Practice Act*, governing habeas corpus proceedings.

Section 1248 of the Civil Practice Act provides: " Where a person who has been duly served " with a writ of habeas corpus " refuses or neglects, without sufficient cause shown by him, fully to obey it [by making his return and producing the prisoner] * * * the court or judge before which or whom it is made returnable upon proof of the due service thereof, must issue forthwith a warrant of attachment, directed generally to the sheriff of any county where the delinquent may be found * * * commanding such officer * * * forthwith to apprehend the delinquent and bring him before the court or judge. Upon the delinquent being so brought up, an order must be made committing him to close custody in the jail of the county in which the court or judge is * * * without being allowed the liberties of the jail. The order must direct that he stand committed until he makes return to the

---

* Civ. Prac. Act, §§ 1230–1282.— [REP.]

writ and complies with any order which may be made by the
court or judge in relation to the person for whose relief the
writ was issued.''

Section 1249 of the Civil Practice Act provides: '' The court
or judge  *  *  *  at the time when the warrant of attach-
ment is issued, or afterwards, also may issue a precept to the
sheriff  *  *  *  commanding him forthwith to bring before
the court or judge the person for whose benefit the writ was
granted  *  *  *.''

Section 1250 of the Civil Practice Act provides: '' The sheriff
*  *  *  to whom a warrant of attachment or precept is
directed  *  *  *  may call to his aid in the execution thereof
the power of the county, as the sheriff may do in the execution
of a mandate issued from a court of record.''

A comparison of these provisions with the relative sections
of article 19 of the Judiciary Law clearly demonstrates that the
remedies in article 77 of the Civil Practice Act are more
effective to enforce obedience to the writ. Accordingly the
Legislature has provided, in section 1282 of the Civil Practice
Act that: '' Except as otherwise expressly prescribed by statute,
the provisions of this article [77] apply to and regulate the
proceedings upon every common law or statutory writ of habeas
corpus, as far as they are applicable; and the authority of a
court or judge to grant such a writ, or to proceed thereupon,
by statute or the common law, must be exercised in conformity
to this article in any case therein provided for.''

It is settled in this Department that the sole remedy for failure
to make a return and to produce a child as required by a writ of
habeas corpus, is that prescribed by section 1248 of the Civil
Practice Act. (*Matter of Sedgwick,* 211 App. Div. 60; *People
ex rel. Bishop* v. *Bishop,* 184 App. Div. 227; see, also, *People
ex rel. Winston* v. *Winston,* 31 App. Div. 121, *supra.*)

In *Matter of Sedgwick* (*supra*) the writ was served upon
the mother in New York. Her attorneys entered a special
appearance to contest the jurisdiction of the court on the ground
that at the time of service, she was passing through the State
to New Jersey where she then had her actual residence. The
court determined that it had jurisdiction and adjudged her
guilty of contempt for failure to produce the children in accord-
ance with the command contained in the writ of habeas corpus,
but determined that she might purge herself of such contempt
by producing the children. The court said (pp. 61–62): '' That
she was in contempt in failing to produce said children appears
*prima facie* from the fact of her not appearing herself and

not having the children before the judge who issued the writ. While she is thus in contempt, she should not be heard to appeal from an order made in the proceedings, and * * * the appeal should be dismissed. * * * While the court should refuse to hear this appeal while appellant is thus defying the writ, for the guidance of the parties it may be well to say that the practice is entirely irregular. The practice was regulated in the Code of Civil Procedure by section 2028, and the same provision is carried into section 1248 of the Civil Practice Act."

In *People ex rel. Bishop* v. *Bishop (supra)*, the father's attorneys appeared specially to contest the jurisdiction of the New York court to hear the habeas corpus proceeding, on the ground that the father and the children were residents of Pennsylvania and the writ was served upon him while he was in New York solely for the purpose of testifying in a bankruptcy proceeding. Special Term overruled the objection and adjudged him guilty of contempt. In dismissing the appeal the court said (p. 228): " The order appealed from is one granted *ex parte,* from which no appeal lies. * * * As there is a serious jurisdictional point involved, in order to prevent further fruitless appeals * * * it seems appropriate to state that the practice pursued in the attempt to enforce obedience to the writ of habeas corpus has been entirely irregular and that the order, made without notice to the appellant, adjudging him in contempt and ordering his imprisonment, was unauthorized. The proper proceedings in such a case are distinctly specified in section 2028 of the Code of Civil Procedure."

*Matter of Jenkins* v. *Kuhne* (57 Misc. 30, affd. on opinion of Special Term, 127 App. Div. 907, affd. 195 N. Y. 610) is the only case cited by counsel or found by the court where a person to whom a writ of habeas corpus was directed was adjudged guilty of a contempt of court for disobedience of the writ. In that case, however, defendant did make his return and produced the prisoner. He was thereafter held in contempt because he had delayed producing the prisoner for an hour after having been served with the writ commanding the prisoner's production forthwith, having meanwhile subjected the prisoner to being fingerprinted and photographed. As was pointed out by Mr. Justice BURR, at Special Term, section 2028 of the Code of Civil Procedure (now Civ. Prac. Act, § 1248) had no application to the case inasmuch as respondent had made his return and produced his prisoner. To cover a case where a return has been made but the writ had been disobeyed in the time, the method, and manner of making the return the

restricted provisions of the Code of Civil Procedure (now Civ. Prac. Act, § 1282) did not apply. While Mr. Justice BURR went on to say that even if section 2028 of the Code of Civil Procedure purported to cover such a situation, the Legislature could not make it exclusive, this must be regarded as dictum which cannot be followed in the light of the subsequent decisions of the Appellate Division in this Department which have already been cited. Though the Second Department affirmed on the opinion of Mr. Justice BURR, the affirmance by the Court of Appeals does not mean that it has adopted the reasoning of the court below in its entirety. (*Adrico Realty Corp.* v. *City of New York,* 250 N. Y. 29, 44.)

The motion to adjudge defendant guilty as for a contempt of court is denied, without prejudice to an application for the issuance of a warrant of attachment for the apprehension of defendant as prescribed in section 1248 of the Civil Practice Act.