KOVACS *v.* BREWER.

No. 200. Argued April 3, 1958.—Decided May 26, 1958.

*Louis Haimoff* argued the cause for petitioner. On the brief was *Harris B. Steinberg.*

No appearance for respondent.

MR. JUSTICE BLACK delivered the opinion of the Court.

On January 17, 1951, a New York court granted George Brewer, Jr., a decree of divorce from his wife, now Aida Kovacs. Custody of their five-year-old daughter, Jane, was awarded to George Brewer, Sr., the paternal

grandfather, pending discharge of Brewer, Jr., from the Navy. As contemplated by the decree, the grandfather removed the child to his home in North Carolina where she has since resided. In November 1954 the mother asked the New York divorce court to modify its decree and award her custody of the child. Although the father and grandfather presented affidavits through counsel challenging the mother's claim, the court granted custody to her. In modifying its decree the court apparently relied, in part, on findings that the grandfather was ill with heart trouble and diabetes and that the living accommodations which he was able to provide for the child were not as suitable as those then offered by the mother.

The grandfather refused to surrender the child, but the mother took no steps to enforce her custody award until February 1956—14 months after the decree had been modified. At that time she brought the present action in a North Carolina state court to secure the child.[1] She offered a certified copy of the New York decree and asserted that it was "entitled to full faith and credit in the courts of North Carolina except as to matters showing changed circumstances since the date of such decree." The father and grandfather again challenged her right to the child. They presented numerous affidavits attesting to facts which they argued demonstrated that the child's best interests would be served by leaving her in North Carolina with the grandparents. Many of these facts had been presented to the New York court at the time the divorce decree was modified, but new evidence was also offered concerning the child's surround-

---

[1] Under North Carolina law "custody of children of parents who have been divorced outside of North Carolina . . . may be determined in a special proceeding instituted by either of said parents . . . ." N. C. Gen. Stat. Ann., 1950, § 50–13.

ings, her school and church experiences and her life in general, particularly with reference to the period that had elapsed between the time when the divorce court modified its decree and the date of the North Carolina proceedings.[2]

After hearing the case on affidavits, stipulations and the pleadings, the trial court made numerous findings. Among other things, it determined that for more than a year immediately preceding the hearing the grandfather had required no medical care for heart or diabetic ailments and was able to work and to properly care for his granddaughter. The court also found that a 17-year-old stepson, who had been residing in the grandfather's home at the time the New York decree was modified, had moved from the home thus leaving more space for the remaining occupants and giving the grandfather a better opportunity to provide for the grandchild. On the basis of these and other findings the trial court concluded that it was "not bound by or required to give effect to the decree of the Court of the State of New York made in 1954" and that the welfare of the child demanded that she remain under the grandfather's custody in the environment to which she had become accustomed.

On appeal the North Carolina Supreme Court approved the trial court's findings, and without specifying any particular reason upheld its "conclusion of law." The court then went on to declare, seemingly as an alternative ground of decision, that the New York decree was not binding because the divorce court had no jurisdiction to modify its original custody award after the child had become a resident and domiciliary of North Carolina. 245 N. C. 630, 97 S. E. 2d 96. We granted

---

[2] Unlike the situation in the New York modification proceeding, the child, father and grandfather were all present before the North Carolina court.

certiorari to consider the claim that the North Carolina courts had failed to give full faith and credit to the judicial proceedings of another State. 355 U. S. 810.

In this Court the petitioner, Mrs. Kovacs, contends (1) that the New York divorce court had jurisdiction to modify its decree by awarding her custody of the child, (2) that in any event the question of jurisdiction was *res judicata* in the North Carolina courts because both the father and grandfather had appeared in the New York proceeding, and (3) that the North Carolina courts failed to give the custody decree, as modified, the faith and credit required by the Federal Constitution and statute.[3] She argues that the North Carolina courts were obligated to give the custody decree the same effect as it had in New York, a question which we reserved in *New York ex rel. Halvey* v. *Halvey,* 330 U. S. 610, 615–616. As presented, the case obviously raises difficult and important questions of constitutional law, questions which we should postpone deciding as long as a reasonable alternative exists.[4]

Whatever effect the Full Faith and Credit Clause may have with respect to custody decrees, it is clear, as the Court stated in *Halvey,* "that the State of the forum has at least as much leeway to disregard the judgment, to qualify it, or to depart from it as does the State where it was rendered." 330 U. S., at 615. Petitioner concedes

---

[3] Art. IV, § 1, declares: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." By statute Congress has provided that judgments "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U. S. C. § 1738.

[4] This approach is reinforced here by the fact that neither the father nor the grandfather appeared or submitted a brief in this Court in support of their right to custody.

that a custody decree is not *res judicata* in New York if changed circumstances call for a different arrangement to protect the child's health and welfare.[5]  In the courts below the question of changed circumstances was raised in the pleadings, considerable evidence was introduced on that issue, and the trial court made a number of findings which demonstrated that the facts material to the proper custody of the child were no longer the same in 1956 as in 1954 when the New York decree was modified. And though it is not clear from the opinion of the North Carolina Supreme Court, it may be, particularly in view of this background, that it intended to decide the case, at least alternatively, on that basis.  Under all the circumstances we think it advisable to remand to the North Carolina courts for clarification, and, if they have not already decided, so they may have an opportunity to determine the issue of changed circumstances.  Cf. *Minnesota* v. *National Tea Co.,* 309 U. S. 551; *Spector Motor Co.* v. *McLaughlin,* 323 U. S. 101, 105.  If those courts properly find that changed conditions make it to the child's best interest for the grandfather to have custody, decision of the constitutional questions now before us would be unnecessary.  Those questions we explicitly reserve without expressly or impliedly indicating any views about them.

The judgment of the Supreme Court of North Carolina is vacated and the cause is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

---

[5] There is some indication that in New York a local custody decree may be modified whenever the best interest of the child demands, whether there have been changed circumstances or not.  See, *e. g.,* 6A Gilbert-Bliss' N. Y. Civ. Prac., 1944, § 1170.  Cf. *Bachman* v. *Mejias,* 1 N. Y. 2d 575, 580, 136 N. E. 2d 866, 868; *Sutera* v. *Sutera,* 1 App. Div. 2d 356, 358, 150 N. Y. S. 2d 448, 451–452.

MR. JUSTICE FRANKFURTER, dissenting.

At stake in this case is the welfare of a child. More immediately the question before us is what restriction, if any, does the Constitution of the United States impose on a state court when it is determining the custody of a child before it. The contest here for the child's custody is between her mother and her grandparents: a mother whom a New York court, in divorce proceedings while the child was present in New York, did not find to be a suitable custodian, and the grandparents, living in North Carolina, to whom the New York court decreed the custody of the child and with whom the child, now twelve years of age, has lived happily for the last six and one-half years. A second New York decree, rendered while the child was in North Carolina, awarded her custody to the mother. A North Carolina court, after a full hearing, with all the relevant parties, including the child, before it, has found that the child's welfare precludes severance of the child's custody from the grandparents.

The facts are these: Petitioner and George Brewer, Jr., son of respondent, were married in New York City in 1945. A child, Jane Elizabeth, was born to them in 1946. In 1950 Brewer, Jr., instituted a divorce action against petitioner in New York, and on January 17, 1951, the New York court granted him a divorce. Finding that "the best interests of the child" so required, that court awarded custody of Jane Elizabeth to respondent until Brewer, Jr., should be discharged from the Navy, at which time he might assume sole custody. The child was at that time both domiciled and resident in New York. After the decree was rendered petitioner went into hiding with the child. Respondent secured control of the child by writ of habeas corpus after she was found in September 1951 and took her to his home in North Carolina, where the child has been living with respondent and his wife until the

present time.  Brewer, Jr., the child's father and respondent's son, is still in the Navy.

In 1954, after having married one Kovacs, petitioner applied to the New York court for a modification of the divorce decree so that custody of the child be awarded to her.  In December 1954 the New York court, through a judge other than the one who had rendered the original decree, awarded to petitioner custody of the child, who was not before the court but in North Carolina, on the ground that "[t]he accommodations and surround[ing]s of the mother are acceptable for the welfare of the infant and would be more desirable for an eight year old girl, whose bringing up belongs to her mother."

Respondent refused to deliver the child to petitioner as directed by the New York decree.  In February 1956 petitioner brought this suit in a North Carolina court, seeking to have respondent compelled to surrender custody of the child to petitioner and to have custody awarded to petitioner by the court.  After a full hearing on the merits of the question of the child's proper custody, at which petitioner, respondent, Brewer, Jr., and the child were present, the North Carolina court denied the relief requested by petitioner; it determined that it was not required to give effect to the 1954 New York decree and awarded custody of the child to respondent.*  The

---

*Among the many relevant circumstances the court canvassed at the hearing were the age, health, religious activities, and community interests of respondent; the suitability of his residence from the standpoint of size, location, appearance, and equipment; the training and interests of respondent's wife; the child's religious and scholastic record, associations, and health; and the educational and recreational facilities available to the child.  On the basis of the evidence, the court made the following findings of fact, among others:

"13. That the petitioner, Aida Kovacs, is not a fit and proper person to have the care, custody and control of the minor, Jane Elizabeth Brewer.

"14. That George A. Brewer, Sr. is a man of excellent character,

Supreme Court of North Carolina affirmed, 245 N. C. 630, 97 S. E. 2d 96, holding that since the child was not before the New York court when it rendered the 1954 decree, that decree was without extraterritorial effect.

While there is substantial accord among the courts as to the practical outcome of cases involving the extraterritorial effect of custody decrees, there has been no little confusion and lack of clarity in the language they have employed in justifying those results. The uncritical reliance of courts, in dealing with the problem raised by this case, upon such concepts as "change of circumstances" has led one learned commentator to remark that "words have been the chief trouble-makers in this field." Stansbury, Custody and Maintenance Law Across State Lines, 10 Law & Contemp. Prob. 819, 826. Although the question presented here is a narrow one, it is of a kind that confronts state courts with great frequency: does the Federal Constitution require North Carolina to give effect to the second New York decree, awarding custody of the child to the petitioner? The evident implication of the Court's opinion today is that, unless "circumstances have changed" since the latter decree, it must be given full faith and credit.

It was the purpose of the Full Faith and Credit Clause to preclude dissatisfied litigants from taking advantage of the federal character of the Nation by relitigating in one State issues that had been duly decided in another. The clause was thus designed to promote a major policy of the law: that there be certainty and finality and an end to harassing litigation. But when courts are confronted

---

good habits and conduct, and is a fit and suitable person to have the care, custody and control of the minor, Jane Elizabeth Brewer.

"15. That the welfare, interest and development of the child will be materially promoted by allowing her to remain in the custody of George A. Brewer, Sr. and in the environment to which she has become accustomed and upon which in a measure she depends."

with the responsibility of determining the proper custody of children, a more important consideration asserts itself to which regard for curbing litigious strife is subordinated—namely, the welfare of the child. That, in the familiar phrase used by the Supreme Court of North Carolina in this case, "is the polar star by which the courts must be guided in awarding custody." 245 N. C., at 635, 97 S. E. 2d, at 100–101. When the care and protection of the minors within their borders falls to States they must be free to do "what is best for the interest of the child," *Finlay* v. *Finlay*, 240 N. Y. 429, 433, 148 N. E. 624, 626 (1925) (per Cardozo, J.); see *Queen* v. *Gyngall*, [1893] 2 Q. B. 232, 241 ("The Court is placed in a position . . . to act as supreme parent of children, and must exercise that jurisdiction in the manner in which a wise, affectionate, and careful parent would act for the welfare of the child").

Because the child's welfare is the controlling guide in a custody determination, a custody decree is of an essentially transitory nature. The passage of even a relatively short period of time may work great changes, although difficult of ascertainment, in the needs of a developing child. Subtle, almost imperceptible, changes in the fitness and adaptability of custodians to provide for such needs may develop with corresponding rapidity. A court that is called upon to determine to whom and under what circumstances custody of an infant will be granted cannot, if it is to perform its function responsibly, be bound by a prior decree of another court, irrespective of whether "changes in circumstances" are objectively provable. To say this is not to say that a court should pay no attention to a prior decree or to the *status quo* established by it. These are, of course, among the relevant and even important circumstances that a court should consider when exercising a judgment on what the welfare of a child before it requires. See *New York ex rel. Allen* v. *Allen*,

105 N. Y. 628, 11 N. E. 143, 144 (1887) (Illinois custody decree was "a fact or circumstance bearing upon the discretion to be exercised without dictating or controlling it").

In short, both the underlying purpose of the Full Faith and Credit Clause and the nature of the decrees militate strongly against a constitutionally enforced requirement of respect to foreign custody decrees.  New York itself, the State for whose decree full faith and credit is here demanded, has rejected the applicability of that requirement to custody decrees.  See, *e. g., Bachman v. Mejias,* 1 N. Y. 2d 575, 580, 136 N. E. 2d 866, 868 (1956) ("The full faith and credit clause does not apply to custody decrees"); *New York ex rel. Herzog v. Morgan,* 287 N. Y. 317, 320, 39 N. E. 2d 255, 256 (1942); *New York ex rel. Allen v. Allen, supra; Hicks v. Bridges,* 2 App. Div. 2d 335, 339, 155 N. Y. S. 2d 746, 751 (1956); *New York ex rel. Kniffin v. Knight,* 184 Misc. 545, 550, 56 N. Y. S. 2d 108, 113 (1945).  And writers on the subject have observed a marked tendency among other state courts to arrive at this same conclusion, although often spelling out their judgments in traditional terms.  See Ehrenzweig, Interstate Recognition of Custody Decrees, 51 Mich. L. Rev. 345; Stansbury, *supra.*

This case vividly illustrates the evil of requiring one court, which may be peculiarly well-situated for making the delicate determination of what is in the child's best interests, to defer to a prior foreign decree, which may well be the result of a superficial or abstract judgment on what the child's welfare requires.  In this case, the New York decree was rendered in a proceeding at which the child was not present—indeed, was not even within the State—by a judge who, so far as the record shows, had never seen her.  Whatever force such a decree might have in New York, the Federal Constitution at all events does not require its blind acceptance elsewhere.  The mini-

mum nexus between court and child that must exist before the court's award of the child's custody should carry any authority is that the court should have been in a position adequately to inform itself regarding the needs and desires of the child, of what is in the child's best interests. And the very least that should be expected in order that the investigation be responsibly thorough and enlightening is that the child be physically within the jurisdiction of the court and so available as a source for arriving at Solomon's judgment. See Stumberg, The Status of Children in the Conflict of Laws, 8 U. of Chi. L. Rev. 42, 56, 58, 62. To dispense with this requirement is seriously to undermine the conscientious efforts that most state courts expend to carry out their functions in child custody cases in a responsible way.

Whatever may be the Court's formal disavowal, a federal question can be found for review here only if the Court requires, however implicitly, that North Carolina give full faith and credit to the second New York decree. For if the Supreme Court of North Carolina is obliged to find that "circumstances have changed" since the second New York decree in order not to be bound by it, it must be that that decree has legal significance under the Full Faith and Credit Clause. The State Supreme Court has already declared unqualifiedly—not as an "alternative ground" but as a necessary disposition of a constitutional claim—that it is not bound by the New York decree. But now the North Carolina decree is allowed to stand only if the highest court of that State will shelter its basis for leaving the custody of this child to the grandparents, under whose nurturing care she has been all these years, by labeling the factors that have led to this determination as "changed circumstances" from what the absentee court had found. Inevitably this is to open the door wide to evasion of the Full Faith and Credit Clause after finding in it a command regarding

custody decrees that it does not carry. The Supreme Court of Errors of Connecticut pointed out almost fifty years ago that, "[a]s a finding of changed conditions is one easily made when a court is so inclined, and plausible grounds therefor can quite generally be found, it follows that the recognition extraterritorially which custody orders will receive or can command is liable to be more theoretical than of great practical consequence." *Morrill* v. *Morrill*, 83 Conn. 479, 492–493, 77 A. 1, 6 (1910). See also Stumberg, Principles of Conflict of Laws (2d ed.), 328–329.

This Court should indeed be rigorous in avoiding constitutional issues where a reasonable alternative exists. But a constitutional issue cannot be, and is not, avoided when a ruling is made that necessarily—and not the less because it does so impliedly—includes it. To what end must the Supreme Court of North Carolina justify its determination that the child should remain with her grandfather, by finding that there has been a change from the conditions under which the New York decree was rendered, unless in default of such a justification that court must be held to have disregarded its constitutional duty to give full faith and credit to the New York decree? If this construction as to the extraterritorial enforceability of the *in absentia* New York decree is not the necessarily implied meaning of today's decision, it can mean only that this Court is enforcing the local North Carolina law of conflicts as to the respect to be paid the prior New York decree.

To be sure, there are situations where the Court properly disavows passing on a constitutional question because it is not clear whether it is here. If a state court judgment rests on an unclear admixture of federal and state grounds and therefore does not of itself disclose the required federal question as a basis for this Court's jurisdiction, the ambiguity may be removed by remanding

the case to the state court for a clarifying opinion or an appropriate certificate. But surely it cannot be said of the decision under review, as was true in *Minnesota* v. *National Tea Co.*, 309 U. S. 551, 555, that "there is considerable uncertainty as to the precise grounds for the decision [of the state court]." Any uncertainty is here interpolated; the North Carolina opinion carries no ambiguity. When this case goes back to the North Carolina Supreme Court, that court, with entire respect for this Court's action, accepting the Court's formal disavowal, may say it rightfully exercised its jurisdiction under local law in not being concerned with "changed circumstances" relating to the absentee New York decree of 1954, because the North Carolina court, with the child before it, on its view of controlling North Carolina law, need justify its custodial decree only by considering whether the child's interests require a change in its custody from the present propitious circumstances. And this for the reason that the Court purports not to suggest to the North Carolina court its duty under the United States Constitution to respect the New York decree of 1954 unless there be a finding that the circumstances on which that decree was based have changed.

I would affirm the judgment of the Supreme Court of North Carolina.