NEREIDA RODRÍGUEZ, Plaintiff and Appellee, *v.*
LUIS TORRES AGUIAR, Defendant and Appellant.

No. 12063. Submitted November 13, 1957.—Decided October 17, 1958.

752

*Francisco Torres Aguiar* and *José Raúl Cancio* (in the brief) and *Jorge L. Córdova* (in the hearing) for defendant. *Gustavo L. Marrero Ledesma* for plaintiff.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

Upon divorcing her former husband Dr. Luis Torres Aguiar, Nereida Rodríguez obtained, as innocent spouse, the patria potestas over the two children born of the marriage. The divorce decree was entered on August 18, 1950, when the oldest son, Luis Rafael Torres Rodríguez, was almost three years old and the youngest child, Lureida María Torres Rodríguez, not quite two years old. Because she was suffering from a certain "emotional disorder due to a combination of problems at the moment," (t. 31), on August 29, 1951 Nereida Rodríguez signed an agreement with her former husband awarding to him "absolute custody of the afore-mentioned children had in their marriage in order that they could obtain the proper support, care and other needs," (t. 79). It seems that this agreement between the parties was approved by the Superior Court. Nereida Rodríguez underwent psychiatric treatment until 1954 (t. 32). Having recovered from her emotional crisis, on February 14, 1956 Nereida Rodríguez requested the Superior Court to restore to her the custody of her two children.

After a hearing, the trial court directed, by order of July 10, 1956, reaffirmed by order of July 20, 1956 denying a reconsideration, that the two children had in her marriage with the petitioner in this case be delivered to the mother. The grounds on which the trial court set aside the agreement of the parties may be summarized in the following manner: the welfare and best interests of the children being

equally guaranteed in both homes, the mother's right of patria potestas granted in the divorce decree must prevail. This conclusion of the respondent judge seems to indicate that he discarded the mother's version to the effect that she had observed a certain "emotional instability" in her children, (t. 24, 45, and 75).

 It is difficult to fashion the patria potestas as a right, capable of becoming the determining factor in a case like the one at bar. We must not forget that this complex of rights and duties which constitutes the patria potestas rests on a premise of a family relation unaltered by divorce. Even assuming that the conditions in the homes of both parents are the same, there still exists a point of advantage that should be investigated more thoroughly; how will the new change of homes affect the welfare of the minors.

The concept "welfare of the minor" includes diverse factors of moral, psychic, cultural, and economic order. The human interests involved in the determination of the custody of minors do not permit that a problem of such great importance be decided by the mere application of the juridical concept of the patria potestas. The judicial duty to make specific conclusions about the diverse factors affecting a minor's welfare, can not be left at the mercy of admissions of the parties or counsel at the hearing of the case.

From August 29, 1951, on which date the agreement was signed, until about the middle of 1956, almost five years have elapsed. According to child psychology these years are the most decisive in the formation of a child's character. We do not know if going on to other family surroundings would harm the subsequent development of its personality. *Kovacs v. Brewer*, 356 U. S. 604, 610 (Frankfurter, dissenting, 1958.) We understand, likewise, that the court must determine by all possible means, including the appointment of an expert by the court itself, whether the mother's emotional recovery has been overall and absolute. The mother's contention and the judge's observation during the hearing of

the case do not seem sufficient for such purpose. Of course, in deciding again the custody of said minors, all the circumstances as they stand at the moment of deciding the question should be taken into account.

The judgment appealed from must be reversed and the case remanded for a new hearing, for the purposes of investigating how the new proposed custody might affect the minors' welfare.

Mr. Justice Serrano Geyls and Mr. Justice Hernández Matos did not take part herein.