Thomas BENNETT, Plaintiff,

v.

Patricia A. BENNETT, Defendant.

Civ. A. No. 80–2456.

United States District Court,
District of Columbia.

May 29, 1984.

Mark A. Bayer, Washington, D.C., for defendant.

Melvin A. Marshall, Washington, D.C., for plaintiff.

## MEMORANDUM AND ORDER

AUBREY E. ROBINSON, Jr., Chief Judge.

Presently before the Court are cross motions for summary judgment as to liability in an action for tortious interference with child custody. Plaintiff Thomas Bennett, a resident of the District of Columbia, has brought this action against his ex-wife Patricia Bennett, a resident of Ohio, for interfering with his alleged lawful custody of the couple's son Steven. Defendant Patricia Bennett counterclaims alleging the same tort for Plaintiff's exercise of custody over their daughter, Monique. Plaintiff bases his claim on a District of Columbia decree awarding custody of Steven and Monique to him; Defendant claims under an Ohio decree rendering a judgment in her favor. Each parent requests compensatory and punitive damages in the amount of $525,000.

The determination of liability must, as always, turn upon the existence of a legal duty. In this case, the legal duty in question is that which flows from a valid state court custody decree. The Court finds no genuine issues of material fact to be in dispute and only one legal issue for the Court's consideration. The legal question remaining before the Court is: which decree, Ohio or District of Columbia, is valid and effective before this Court, was violated and, therefore, gives rise to liability in tort?

The undisputed and material facts of this case began when Patricia and Thomas Bennett were divorced by the *ex parte* decree of the Court of Common Pleas, Trumbull County, Ohio in 1974. The divorce decree awarded custody of the couple's three minor children to their mother Patricia and set $170.00 per month as child support from their father Thomas. That decree further ordered Thomas Bennett to pay $3,000.00 accumulated arrearage in temporary alimony and child support.

Mr. Bennett did not contest any portion of the Ohio decree. In fact, he acquiesced to the Ohio court's judgment that Mrs. Bennett should have custody of their children until March 14, 1978 when he went to Ohio, took the two older children, Steven and Monique, and returned with them to the District of Columbia. Soon thereafter, he filed for legal custody of the two children in the Superior Court of the District of Columbia.

Mrs. Bennett moved to have the action dismissed, urging that the District of Columbia court lacked jurisdiction and that it was required to give full faith and credit to the Ohio judgment, thereby recognizing her right to custody. The Superior Court rejected these arguments, finding that it was not bound by law to give full faith and credit to the foreign custody decree and finding that it did have jurisdiction to determine the best interests of Steven and Monique because of their presence in the District of Columbia. Upon its consideration of the children's best interests, the Superior Court awarded custody to Thomas Bennett.

In October 1979, Mrs. Bennett removed the children from their father's home in the District of Columbia and took them back to Ohio. She did so knowing that the District of Columbia court had rejected her arguments and awarded custody to Mr. Bennett. Thomas Bennett has regained possession of Monique; Steven remains with his mother in Ohio. Defendant does not dispute that her action was in violation of the Superior Court decree. Instead, she argues that, as a matter of law, full faith and credit should have been accorded to the Ohio decree and that, therefore, the District of Columbia judgment should never have been entered.

◼ It is Defendant's position that the District of Columbia decree has no force or effect. The Court must disagree. Under the law of the District of Columbia, the Superior Court did have authority to award custody of children within the jurisdiction. In a recent decision, the District of Columbia Court of Appeals stated the relevant law in this way: "At the time of the proceedings below the District of Columbia was among a handful of jurisdictions that had not adopted the UCCJA [Uniform Child Custody Jurisdiction Act] and where, therefore, a child's physical presence was sufficient to warrant the exercise of jurisdiction by our courts." *Albergottie v. James*, 470 A.2d 266, 269 (D.C.App.1983). An earlier case, *In re West*, 245 A.2d 636, 638 (D.C. 1968), held that "[w]hen an earlier decree has been issued without full inquiry or when the second court has more facts available than were before the first court, the second court must consider the additional information and determine anew the question of custody."

Accordingly, before awarding custody to Mr. Bennett, the Superior Court stated that "the rule with respect to awarding custody of children within the jurisdiction requires the Court to re-examine the best interests of the minors under all of the relevant circumstances presented." The Uniform Child Custody Jurisdiction Act abrogates this rule. However, the District of Columbia did not adopt the UCCJA until March 10, 1983. *See*, D.C.Code § 16–4501 *et seq.* At the time that the Superior Court entered its judgment in favor of Mr. Bennett, the above rule was a correct statement of the law.

◼ The Superior Court also correctly found that full faith and credit "was not controlling." The Supreme Court has more than once declined to require that the full faith and credit clause of the United States Constitution be applied to child custody decrees, which are by nature ever-modifiable.

368

*See, e.g., Ford v. Ford,* 371 U.S. 187, 83 S.Ct. 273, 9 L.Ed.2d 240 (1967); *Kovacs v. Brewer,* 356 U.S. 604, 78 S.Ct. 963, 2 L.Ed.2d 1008 (1958); *May v. Anderson,* 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953); *New York ex rel. Halvey v. Halvey,* 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133 (1947). The UCCJA should prevent the jurisdictional competition which resulted from the fact that the full faith and credit clause was not necessarily applied to child custody decisions. However, the present state of the law does not alter the fact that in 1979, when the decree was issued and when the tort occurred, the District of Columbia Superior Court entered a valid judgment.

The Court's finding that the Superior Court decree was validly issued makes an analysis of the validity of the Ohio decree unnecessary. This Court is bound by the doctrine of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny to follow the law of the District of Columbia. Moreover, while the Court of Appeals decision remanding this case found that the "domestic relations exception" to diversity jurisdiction does not prevent this tort suit, it also stated that a determination of "the best interests of the children" should be left to the state courts. *Bennett v. Bennett,* 682 F.2d 1039, 1042–1043 (D.C.Cir.1982). The "best interests" of Steven and Monique were validly determined by the District of Columbia court. The tort occurred within this jurisdiction and injured a District of Columbia resident. There should be no question that local law applies. Therefore, the decree in favor of Thomas Bennett is valid before this Court.

When Defendant Patricia Bennett removed Steven from the District of Columbia, she violated Plaintiff's custody rights under the decree which must be recognized by this Court; under the law of this Circuit, she can be made to compensate Plaintiff for the harm done. *Hinton v. Hinton,* 436 F.2d 211 (D.C.Cir.1970). For these reasons, summary judgment as to liability will be entered in favor of Plaintiff Thomas Bennett. Defendant's motion is

denied. Finally, a hearing shall be set in order to determine what further action is required in this case.