**John OLMO, Plaintiff,**

v.

**Anne T. OLMO, Defendant.**

No. 85 C 4341.

United States District Court, E.D. New York.

Oct. 27, 1986.

David M. Ettinger, New York City, for plaintiff.

Dikman, Dikman & Botter (Allan S. Botter, of counsel), Jamaica, N.Y., for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff, the father of a child, brought this action pursuant to the Parental Kidnapping Prevention Act of 1980 (the Act), 28 U.S.C. 1738A (1982), asserting jurisdiction under 28 U.S.C. § 1331 (1982), giving the district courts federal question jurisdiction. He alleges that defendant, the child's mother, removed the child from New York to Colorado, and that Colorado failed to enforce a New York court custody determination.

The Act provides in substance in subsection (a) that the authorities of every State shall enforce "any child custody determination" made "consistently" with the Act by a court of another State. By subsection (c) such a custody determination is "consistent" with the Act only if the court of the state has jurisdiction under the law of that state and one of several conditions is met,

including the condition that the state "(i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State."

The father's complaint asks this court to determine it has jurisdiction to declare the rights of the parties under the Act, to find that the child's "home state" under the Act was and is New York and that the New York custody determination is binding on the parties, and to direct the Colorado courts to enforce the New York determination.

The defendant mother moves pursuant to Federal Rule of Civil Procedure 56(b) for summary judgment dismissing the complaint, on the grounds that (a) the court lacks jurisdiction, (b) plaintiff has not stated a cause of action, and (c) the Colorado courts' determinations are *res judicata* as to plaintiff's claim.

This action concerns a battle over the custody of the parties' child, a battle they have carried on in two states. The New York court awarded custody to the father. The Colorado court awarded custody to the mother. The father has exhausted his Colorado state appeals. The issue here, apparently of first impression in this circuit, is whether the Act gives this court authority to decide which state has power to determine custody of the child.

The uncontested facts are as follows. The child was born in New York on October 13, 1979. The parties were married on December 15, 1979. On April 19, 1982, the mother took the child and moved to Colorado. On June 23, 1982 the father filed in New York court for an order of separation and a writ of habeas corpus to deliver the child. Almost a month later, on July 19, 1982, the mother filed for divorce in Colorado. She concedes that later that same day she was served in the New York separation action.

On October 5, 1982, on the mother's default and after receiving a referee's report, the Supreme Court in New York granted the father a judgment of separation and custody of the child. Three days later, the mother moved for an order to show cause in the New York Supreme Court to vacate the judgment. The court enjoined the father from taking any steps to enforce the custody decree. Thereafter it referred the motion to a traverse hearing.

On March 23, 1983, the Colorado district court granted a judgment of divorce and awarded custody to the mother. Both sides were represented by counsel. The father was served in December 1982. He moved to stay the proceedings on the ground New York had assumed jurisdiction, and the court deemed the motion untimely.

On May 4, 1983, apparently after holding a traverse hearing on April 12, 1983, the New York Supreme Court sustained the traverse, vacated the separation judgment, and dismissed the action.

The Colorado Court of Appeals affirmed the divorce judgment on May 31, 1983. The court held that, although the trial court should have stayed the proceeding when it became aware of the New York action, only Colorado had jurisdiction because the father did not serve the mother in the New York action until after she filed the Colorado suit.

On June 18, 1984, the New York Appellate Division unanimously reversed the May 4, 1983 Supreme Court order and denied the mother's application to vacate the original separation judgment.

On June 24, 1985, the Supreme Court of Colorado denied the father's petition for a writ of certiorari. He brought this action in November 1985.

The father contends this court has federal question jurisdiction under the Act. He asserts that Colorado was prohibited by the Act from exercising jurisdiction to award custody because the child's "home state," New York, had made a child custody determination "consistently" with the Act.

Subsection (b)(4) of the Act, in pertinent part, defines "home state" as the state in which the child has lived with a parent "for at least six consecutive months." As noted above, a custody determination by the New York court in this case was "consistent" with the Act if New York had been the child's "home state" within the six months preceding the commencement of the proceedings and the father resided in New York. The Act prohibited Colorado from exercising jurisdiction if the child's "home state" was doing so on the date Colorado proceedings were commenced.

The mother argues that the Act does not authorize suit in a federal court to enforce its terms and that because the New York determination was "in limbo" when the Colorado divorce judgment was entered, Colorado could properly assume jurisdiction. She further says that because she was not served until after filing the divorce suit, Colorado obtained jurisdiction before New York.

Article IV, Section 1 of the United States Constitution, the so-called full faith and credit clause, provides

Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

In the exercise of the power granted Congress under this clause it passed, many years ago, what became 28 U.S.C. § 1738 providing for the manner in which the records and judicial proceedings of a state court were to be authenticated, and reciting that such records and proceedings "shall have the same full faith and credit" in every court as they have in the courts from which they are taken.

In a series of cases the Supreme Court recognized that the enforcement of a child custody order presented special problems under the full faith and credit clause. Obviously such an order must be subject to modification if changed circumstances so require in the best interests of the child.

Over a period of years the Supreme Court consistently declined to decide whether the full faith and credit clause applies to custody determinations at all. *Ford v. Ford,* 371 U.S. 187, 192 n. 3, 83 S.Ct. 273, 276 n. 3, 9 L.Ed.2d 240 (1962) (citing cases). Moreover, the Supreme Court held that even if the clause did so apply, it required a state court to adopt the custody order of another state only to the extent that the other state was bound by the order. *Kovacs v. Brewer,* 356 U.S. 604, 607–08, 78 S.Ct. 963, 965–66, 2 L.Ed.2d 1008 (1958); *New York ex rel. Halvey v. Halvey,* 330 U.S. 610, 614–15, 67 S.Ct. 903, 905–06, 91 L.Ed. 1133 (1947). Since the court entering the order could modify it to take account of changed circumstances, the court of another state could do the same. *Kovacs, supra,* 356 U.S. at 607–08, 78 S.Ct. at 965–66; *Halvey, supra,* 330 U.S. at 615, 67 S.Ct. at 906.

Congress perceived that the refusal of some states to respect the custody decrees of other states encouraged one parent without custody to snatch a child from the parent with custody and to relitigate the custody issue in a different state. *Thompson v. Thompson,* 798 F.2d 1547, 1553–54 (9th Cir.1986); *Flood v. Braaten,* 727 F.2d 303, 304, 310 (3d Cir.1984) and authorities cited. To deal with what it found to be "often inconsistent and conflicting" practices of different states in custody matters Congress passed the Act in 1980, acting pursuant to the full faith and credit clause, the commerce clause, and the due process clauses. Pub.L. No. 96–611, § 7, 94 Stat. 3568 (1980) (set out as note at 28 U.S.C. § 1738A (Supp.1986)). There can be no doubt that Congress had constitutional power to pass the Act and to require more stringent standards than those contained in the full faith and credit clause. *Wickard v. Filburn,* 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942).

■ The primary question before this court is whether the Act created a claim enforceable by the plaintiff father in a federal district court. The Act neither mentions nor prohibits federal court jurisdiction. But it directs that state courts "shall enforce" and "shall not modify" certain custody decrees, indeed "shall not exercise jurisdiction" in certain custody proceedings. It seems unlikely that in adopting this mandatory language Congress was engaging in mere benevolent yearnings or was prepared to add to the burdens of the Supreme Court by requiring it to oversee implementation of the Act. *See Flood, supra,* at 312.

This court has examined the legislative history of the Act and agrees with the Third Circuit decision in *Flood* that nothing in that history suggests that the Act was designed to leave state compliance virtually optional. As the text of the Act shows, Congress' purpose was not to require or allow the federal court to make custody determinations or to become the court of first resort to enforce a custody decree. The restricted role of the federal court is to correct an error of a state court in violating the Act by asserting jurisdiction over a child custody case or by refusing to enforce another state's custody decree. *Id.* at 307. The decision in the *Flood* case was followed by a different panel in *DiRuggiero v. Rodgers,* 743 F.2d 1009, 1015–17 (3d Cir. 1984), and by the Fifth Circuit in *Heartfield v. Heartfield,* 749 F.2d 1138, 1140–41 (5th Cir.1985). *See also McDougald v. Jenson,* 786 F.2d 1465, 1475 (11th Cir.1986). The Ninth Circuit reached a different result in *Thompson v. Thompson,* 798 F.2d 1547 (9th Cir.1986), holding, one panel member dissenting, that Congress did not intend to create a federal cause of action to enforce the Act. This court deems the reasoning of the other circuits more persuasive.

■ Because both Colorado and New York have asserted jurisdiction and have made conflicting custody determinations, the court has federal question jurisdiction pursuant to the Act for the limited purpose of deciding which state had power under the Act to decide custody of the child. Such a decision will not prejudice the parties. Either may apply to the appropriate state court to modify a custody award.

The father has made a colorable claim that New York was and Colorado was not the child's home state under the Act at the times in question. If, as the father claims, the Colorado court was prohibited from taking jurisdiction by reason of the fact that the child's home state was New York, that court's decree is not *res judicata*.

Defendant's motion for summary judgment is denied. The parties are directed to call chambers to arrange for an early hearing to resolve the issues. So ordered.