Vesta June Rea SALISBURY,
Plaintiff-Appellant,

v.

Dennis A. SALISBURY,
Defendant-Appellee.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

May 12, 1983.

Application for Permission to Appeal
Denied by Supreme Court Oct. 3, 1983.

Maclin P. Davis, Jr., William E. Shofner, Nashville, for plaintiff-appellant.

Daniel D. Finch, Finch & McBroom, Nashville, for defendant-appellee.

## OPINION

LEWIS, Judge.

In October, 1979, plaintiff-appellant filed her complaint in the Circuit Court for Davidson County, Tennessee, and sought an

absolute divorce from defendant, custody of the parties' two minor children, child support, alimony, and attorneys' fees. Defendant answered denying all material allegations of plaintiff's complaint and also filed a counter-complaint in which he sought an absolute divorce and custody of the parties' minor children.

An order was entered in December, 1979, awarding temporary custody of the two minor children to plaintiff. In June, 1980, defendant was ordered to pay plaintiff $500 per month child support on the 20th of each month, commencing June 20, 1980.

The case came on for an evidentiary hearing on October 28, 29, and November 3, 1980. The Trial Court took the case under advisement and in February, 1981, a decree was entered which awarded defendant an absolute divorce, awarded temporary custody of the two minor children to plaintiff with defendant having visitation privileges for one-half of the children's 1981 summer vacation, ordered defendant to continue paying child support of $500 per month on the 20th of each month, awarded each of the parties a one-half undivided interest in the home of the parties, ordered the furnishings in the home to be equally divided, ordered the stock in Neptune Equipment Company to remain as it was at the time of trial (one-fourth of the stock was owned by plaintiff and three-fourths by defendant), awarded the yacht, known as Triana, to defendant, and ordered the costs to be divided equally between the parties.

Thereafter, plaintiff filed a motion to alter or amend or, in the alternative, for a new trial and, subsequently, amended the motion seeking to reopen the proof on the ground of newly discovered evidence. This motion was heard and denied by the Trial Court.

In September, 1981, defendant filed a petition seeking to have plaintiff held in contempt for her failure to be present with the minor children in Tennessee on September 8, 1981. Plaintiff filed her answer to the petition and alleged that she had sued defendant in Texas for permanent custody of the children; that on September 15, 1981,

the suit in Texas was tried upon its merits and a judgment was rendered in her favor awarding plaintiff permanent custody of the minor children. The answer further alleged that the Texas judgment barred the enforcement of any order of the Tennessee trial court on the issue of custody.

Plaintiff then moved the Circuit Court for Davidson County to hold that it lacked jurisdiction over the issue of permanent custody of the minor children because the children had been living in Texas since October, 1979, and because the Texas trial court on September 15, 1981, awarded plaintiff permanent custody of the children. In April, 1982, the Circuit Court for Davidson County denied plaintiff's motion and awarded permanent custody of the parties' two minor children to defendant. Plaintiff again moved the Trial Court to alter or amend the judgment or, in the alternative, for a new trial. This motion was denied on June 22, 1982.

On July 1, 1982, the 14th Circuit Court of Appeals, Houston, Texas, affirmed the Texas trial court's decision awarding to plaintiff permanent custody of the minor children. Plaintiff's motion to consider the 14th Court of Appeals, Houston, Texas, opinion as a post-judgment fact has been granted.

Plaintiff has appealed from portions of the decree of the Fourth Circuit Court for Davidson County which awarded defendant a one-half interest in the home of the parties; awarded defendant the yacht "Triana"; awarded permanent custody to defendant; and failed to award plaintiff attorneys' fees incurred in obtaining child custody and support. Plaintiff has not appealed from that portion of the decree awarding defendant an absolute divorce.

Plaintiff and defendant were married in Nashville, Tennessee, on April 3, 1970. Two children were born of the marriage, Vashon Salisbury, born November 19, 1973, and Vanya Renee Salisbury, born October 13, 1978. During the marriage the parties purchased a home at 2701 Whorley Court in Nashville, and furnishings for the home. In addition, the parties purchased a yacht

known as the "Triana." The parties also organized and operated Neptune Equipment Company. In September, 1979, plaintiff separated from defendant and moved from Tennessee to Texas with the two minor children, who have resided in Texas with plaintiff since that time.

On appeal, plaintiff has presented nine issues, the first of which is:

> The Trial Court did not have jurisdiction to award defendant permanent custody of the minor children after a Texas trial court had awarded such custody to plaintiff.

The United States Constitution mandates that:

> Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

U.S. Const., art. IV, § 1.

■ As implemented by Congress, the full faith and credit clause requires that "judicial proceedings ..., shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738. However, the effect of this broad statute has been modified by the Parental Kidnapping Prevention Act of 1980 (PKPA), codified, in relevant part, as 28 U.S.C. § 1738A (Supp. IV 1981). The PKPA now governs how full faith and credit must be extended to child custody determinations.

The United States Supreme Court had applied 28 U.S.C. § 1738 to custody determinations before the enactment of 28 U.S.C. § 1738A and had held that under certain circumstances custody determinations of sister states were not entitled to full faith and credit. *See, Kovacs v. Brewer,* 356 U.S. 604, 78 S.Ct. 963, 2 L.Ed.2d 1008 (1958); *May v. Anderson,* 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953); *Halvey v. Halvey,* 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133 (1947). However, these cases are inapposite to the instant fact situation and are, in any event, of doubtful validity since the passage of 28 U.S.C. § 1738A.

Application of 28 U.S.C. § 1738A was argued before the Texas courts in plaintiff's custody suit. At oral argument, this Court properly raised the issue of whether the PKPA was decisive in this appeal. Tenn.R. App.P. 13(b). Our examination of 28 U.S.C. § 1738A leads us to hold that the Texas courts had no subject matter jurisdiction to make a custody determination in this case.

## A. RES JUDICATA STATUS OF THE TEXAS JURISDICTIONAL DETERMINATION

On the question of subject matter jurisdiction, the 14th Court of Appeals in Houston, Texas, held:

> We have carefully reviewed the record and, in light of the trial court's findings that Appellee and her two children have continuously resided in Texas since October 1, 1979, and that the State of Texas is in a better position to adjudicate conservatorship, we do not think the court erred in exercising its jurisdiction to enter an order appointing a managing conservator to protect the minor children involved. TEX.FAM.CODE ANN. § 11.051(4) (Vernon Supp.1982); *Perry v. Ponder,* 604 S.W.2d 306 (Tex.Civ.App.—Dallas 1980, no writ).

*Salisbury v. Salisbury,* 14th Tex.Civ.App. at 3 (filed July 1, 1982, at Houston). The record does not reflect whether an appeal was taken to the Texas Supreme Court.

Justice Junell, writing for the Texas Court of Appeals, reached the above result based on his consideration that "[t]he Parental Kidnapping Prevention Act of 1980 provides that it takes effect on July 1, 1981, and, therefore, does not control this proceeding which was initiated [in Texas] on May 18, 1981. 38 [28] U.S.C. § 1738A (1980)." *Id.* at 2. Counsel for the father (defendant herein) had properly raised this issue by motion in the Texas trial court. *Id.* at 3–4.

■ We recognize the general rule that if the rendering state has decided the issue of subject matter jurisdiction and that determination is not open to collateral attack in the rendering state, then that determination is also immune from collateral attack in a sister state. *Durfee v. Duke,* 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963); *Treinies v. Sunshine Mining Co.,* 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85 (1939).

■ Our research convinces us that Texas would not permit relitigation of the jurisdiction question acted upon by the Texas Court of Appeals; *see, Mike Hooks, Inc. v. Pena,* 313 F.2d 696, 699 (5th Cir.1963), hence, the jurisdictional finding cannot be collaterally attacked in Tennessee on the ground that the judgment is not *res judicata* in Texas.

However, the United States Supreme Court has acknowledged that the supremacy clause and the doctrine of federal preemption "may in some contexts be controlling" over the full faith and credit clause. *Durfee,* 375 U.S. at 114, 84 S.Ct. at 246, 11 L.Ed.2d at 192; *Restatement (Second) of Conflict of Laws* § 97, Comment c (1971). Justice Stewart suggested in *Durfee* that under certain circumstances, collateral attack against jurisdiction determinations may be desirable to protect the supreme law of the land:

The Restatement of Conflict of Laws recognizes the possibility of such exceptions:

"Where a court has jurisdiction over the parties and determines that it has jurisdiction over the subject matter, the parties cannot collaterally attack the judgment on the ground that the court did not have jurisdiction over the subject matter, unless the policy underlying the doctrine of res judicata is outweighed by the policy against permitting the court to act beyond its jurisdiction. Among the factors appropriate to be considered in determining that collateral attack should be permitted are that

"(a) the lack of jurisdiction over the subject matter was clear;

"(b) the determination as to jurisdiction depended upon a question of law rather than of fact;

"(c) the court was one of limited and not of general jurisdiction;

"(d) the question of jurisdiction was not actually litigated;

"(e) the policy against the court's acting beyond its jurisdiction is strong." Restatement Conflict of Laws, § 451(2) (Supp.1948). See Restatement, Judgments, § 10 (1942).[1]

*Id.,* 375 U.S. at 114 n. 12, 84 S.Ct. at 247 n. 12, 11 L.Ed.2d at 192 n. 12.

With these factors in mind, we confront the holding by Texas that the PKPA, a federal jurisdictional statute, does not apply to the instant case. This is a question of law, not of fact. Whether or not the PKPA contemplates that relevant findings of fact by a rendering state will be vulnerable to collateral attack in the courts of a sister state or of the United States, under the supremacy clause, questions of law construing that statute must necessarily be open to collateral attack in other tribunals. *Kalb v. Feuerstein,* 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940); *cf., Kloeb v. Armour and Co.,* 311 U.S. 199, 61 S.Ct. 213, 85 L.Ed. 124 (1940).

In *Kalb,* the Circuit Court of Walworth County, Wisconsin, construed a federal bankruptcy act in such a way that the Wisconsin court retained jurisdiction over a foreclosure in the face of an automatic stay from a federal bankruptcy court. Kalb did not appeal but instead, brought a collateral attack in a Wisconsin court. Dismissal of the attack was affirmed by the Wisconsin Supreme Court and was reversed by the United States Supreme Court.

Justice Black, writing for the majority, stated:

It is generally true that a judgment by a court of competent jurisdiction bears a

1. Since 1973, the *Restatement, Conflict of Laws* and the *Restatement, Judgments,* have both been rewritten, but this passage remains a valid description of the law. *See, Restatement (Second) of Conflict of Laws* § 97 (1971), *Restatement (Second) of Judgments* § 12 (1982).

presumption of regularity and is not thereafter subject to collateral attack. But Congress, because its power over the subject of bankruptcy is plenary, may by specific bankruptcy legislation create an exception to that principle and render judicial acts taken with respect to the person or property of a debtor whom the bankruptcy law protects nullities and vulnerable collaterally. Although the Walworth County Court had general jurisdiction over foreclosures under the law of Wisconsin, a peremptory prohibition by Congress in the exercise of its supreme power over bankruptcy that no State court have jurisdiction over a petitioning farmer-debtor or his property, would have rendered the confirmation of sale and its enforcement beyond the County Court's power and nullities subject to collateral attack. The States cannot, in the exercise of control over local laws and practice, vest State courts with power to violate the supreme law of the land. *Kalb,* 308 U.S. at 439, 60 S.Ct. at 346, 84 L.Ed. at 374. As Congress has plenary power in bankruptcy, it likewise has the plenary power to apply the full faith and credit clause. U.S. Const., art. IV, § 1.

The strong congressional policy behind the PKPA bolsters our decision to sustain the collateral attack. Prevention of child snatching and forum shopping are the primary legislative goals of the PKPA. In the instant case the plaintiff mother has engaged in a most blatant case of forum shopping, having chosen Tennessee as her original forum and then switching to Texas while a Tennessee judge waited for the end of the children's school year to make a final custody decision.

While this collateral attack in a sister state detracts from the judicial finality of custody determinations under the PKPA, when review is limited by the factors suggested by *Durfee,* the detraction is minimized. Restriction of collateral review to questions of law will permit state and federal courts to develop a uniform interpretation of 28 U.S.C. § 1738A without the possibility of other tribunals being called upon to relitigate questions of parental fitness or the best interests of the child.

We consider the defendant's contention that the Texas custody determination is void because of fraud to be without merit. The error by the Texas courts in assuming jurisdiction was not due to fraud but to an incorrect decision on a question of law.

## B. EFFECTIVE DATE OF THE PKPA

■ We find that the Texas Court of Appeals incorrectly decided that PKPA was not in effect until July 1, 1981. We hold that December 28, 1980, is the effective date of the PKPA. This decision is grounded on the reasoning of the New Mexico Supreme Court in *State ex rel. Valles v. Brown,* 97 N.M. 327, 639 P.2d 1181, 1183 (1981), which we adopt.

A preliminary matter we must dispose of is whether the PKPA became effective December 28, 1980 (the enactment date) or July 1, 1981.

Section 2 states: "The amendments made by this Act shall take effect on, and apply to services furnished on or after July 1, 1981." Parental Kidnapping Prevention Act of 1980, Pub.L. No. 96–611, § 2, 94 Stat. 3566 (1980). It would seem, at first glance, that this provision is dispositive of the issue.

However, we think not for the following reasons: First, Sections 1 through 5, inclusive, and Section 11 of the "Act" have nothing to do with the substantive law of PKPA. They are technical amendments to the Social Security Act. 42 U.S.C. §§ 301 through 1397 (1976 and Supp. III 1979).

Secondly, the structure of the "Act" clearly indicates that the PKPA is separate and distinct. The short title of the PKPA appears at Section 6 of the "Act", and the short title is an indicator of the beginning part of legislation. See 1A Sands, Sutherland's Statutes and Statutory Construction §§ 20.02, 20.10 (4th rev. ed. 1972).

Thirdly, Section 10 of the "Act" requires the Attorney General of the United States to report to Congress 120 days

after the enactment date of the PKPA on the steps taken to enforce it. To say that the PKPA became effective on July 1, 1981 is to ignore the Congressional requirements placed on the Attorney General. We will not give statutes a literal interpretation which would lead to absurd results, *State v. Nance,* 77 N.M. 39, 419 P.2d 242 (1966), *cert. denied,* 386 U.S. 1039, 87 S.Ct. 1495, 18 L.Ed.2d 605 (1967), when the statute "can be given a reasonable application consistent with their words and legislative purpose." *Haggar Co. v. Helvering,* 308 U.S. 389, 394, 60 S.Ct. 337, 339, 84 L.Ed. 340 (1940).

Therefore, we reject the July 1, 1981 date as when the statute became effective. Since the PKPA does not have an express effective date, the enactment date becomes the effective date. [Citations omitted.]

## C. APPLICATION OF THE PKPA

■ Ascertaining the effective date of the PKPA is far easier than applying the jurisdictional rule it establishes. To simplify that process, we look to the concise analytical method employed by the New Mexico Supreme Court in *State ex rel. Valles.*

It is undisputed that a custody proceeding was pending in Tennessee when the Texas custody proceeding was initiated. It is also undisputed that at the time the Texas proceeding was initiated there was a temporary order from Tennessee regarding custody. This order qualified as a "custody determination" under the PKPA:

> (3) "custody determination" means a judgment, decree, or other order of a court providing for the custody or visitation of a child, and includes permanent and temporary orders, and initial orders and modifications.

28 U.S.C. § 1738A(b)(3).

We approach the jurisdiction question as follows:

1. A Tennessee court exercises jurisdiction consistently with the provisions of PKPA only when Tennessee has jurisdiction, both under its own law, *i.e.,* T.C.A. §§ 36–1301 through 36–1325; 28 U.S.C.

§ 1738A(c)(1); and under the PKPA, 28 U.S.C. § 1738A(c)(2)(A) through 28 U.S.C. § 1738A(c)(2)(E).

2. According to the PKPA, a "court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination." 28 U.S.C. § 1738A(g).

3. The PKPA commands that: "The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State." 28 U.S.C. § 1738A(a).

(1) *Tennessee Child Custody Act*

Under T.C.A. § 36–1302(5), Tennessee is the "Home state":

> (5) "Home state" means the state in which the child immediately preceding the time involved lived with his or her parents, a parent, or a person acting as parent, for at least six (6) consecutive months, and in the case of a child less than six (6) months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six (6) months or other period . . . .

When the mother and children left Tennessee in September, 1979, both children had lived in Nashville since their respective births on November 19, 1973 and October 13, 1978. The mother filed for divorce and custody in the Circuit Court for Davidson County on October 3, 1979.

"Home state" jurisdiction is exercised pursuant to T.C.A. § 36–1303(a)(1):

> JURISDICTION TO MAKE CUSTODY DETERMINATION.—(a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) This state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of the child's removal or retention by a person claiming custody or for other reasons, and a parent or person acting as parent continues to live in this state . . . .

We hold that Tennessee exercises jurisdiction under its own laws.

At this point, we also hold that *Kenner v. Kenner,* 139 Tenn. 211, 201 S.W. 779 (1917), and its progeny, argued as authority here by the mother, are pre-empted by the PKPA. These cases express the policy of Tennessee courts to enforce, through comity, the final custody orders of courts in sister states. The principles involved pertain to conflict of laws and not to substantive internal jurisdiction law. It is toward conflict doctrines that the PKPA is directed. Hence, *Kenner* is pre-empted. U.S. Const. art. VI, cl. 2; *Gibbons v. Ogden,* 22 U.S. 1, 6 L.Ed. 23 (1824).

(2) *Parental Kidnapping Prevention Act*

Tennessee also has "home State" jurisdiction under the virtually identical provisions of the PKPA:

"home State" means the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old, the State in which the child lived from birth with any of such persons. Periods of temporary absence of any of such persons are counted as part of the six-month or other period . . . .

28 U.S.C. § 1738A(b)(4). By meeting the PKPA "home State" definition, Tennessee satisfies one of the alternative jurisdictional conditions of 28 U.S.C. § 1738A(c)(2)(A):

(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if—

(1) such court has jurisdiction under the law of such State; and

(2) one of the following conditions is met:

(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State . . . .

Under the same facts as discussed relative to Tennessee law, this state is the "home State" under 28 U.S.C. § 1738A. We hold that in issuing the temporary custody order the Circuit Court for Davidson County acted consistently with the provisions of the PKPA.

Because this state exercised jurisdiction consistently with the PKPA, the provisions of 28 U.S.C. § 1738A(g) command that the Texas courts "shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency" of the Tennessee proceeding. We conclude that Texas has no subject matter jurisdiction under 28 U.S.C. § 1738A(g).

Finally, because Tennessee, and not Texas, had jurisdiction, the temporary order was entitled to full faith and credit in Texas. The PKPA mandates that "[t]he appropriate authorities of every State shall endorse according to its terms, . . . any child custody determination . . . of another State." 28 U.S.C. § 1738A(a).

Modification is permissible even here if the dictates of 28 U.S.C. § 1738A(f) are met. Those dictates have not been met by Texas because Tennessee has not lost or declined to exercise its jurisdiction. 28 U.S.C. § 1738A(f)(2).

We conclude that the Tennessee decree, as modified by this Court, is entitled to enforcement by the state of Texas, which we would point out would still be a Mexican province had Tennesseans not fought at the Alamo.

Plaintiff's second and sixth issues, which we discuss together, are as follows:

2. Assuming the Trial Court had jurisdiction to award permanent child custody, did the Trial Court err in awarding such custody to defendant?

6. Whether or not the Trial Court erred in allowing into evidence conduct of plaintiff prior to her marriage to defendant?

■ The Trial Court, over the strenuous objection of plaintiff, allowed evidence of plaintiff's alleged marital misconduct which occurred during her first marriage. That marriage had ended in divorce more than ten years before the trial of this cause. Notwithstanding plaintiff's objections, she was also cross-examined regarding her affairs with men prior to her marriage to defendant. The Trial Judge stated he was allowing the evidence only as to the question of custody, *i.e.,* the best interests of the parties' children.

An examination of the record fails to show any relevancy regarding plaintiff's conduct during or after her first marriage and prior to her marriage to defendant as it concerns the custody of the children. We are of the opinion that the Trial Court erred in allowing this evidence. However, that error is harmless in view of the legally admissible evidence to support the custody determination. Therefore, the error did not affect the judgment. Tenn.R.App.P. 36(b).

■ We have reviewed this record, as we are bound to do in child custody cases, *de novo,* giving weight to the decision of the trial judge who saw and heard the witnesses. *Smith v. Smith,* 188 Tenn. 430, 439, 220 S.W.2d 627, 630 (1949). After our review, we are of the opinion that there is legally admissible evidence in the record to support the Trial Court's determination that it is in the best interests of the children that defendant have custody.

There is evidence that plaintiff, in 1977, took the parties' oldest child (at that time, the parties' only child) to Florida, where she carried on an affair with a man several years her senior. She stayed in Florida for several months before returning to Nashville. There is evidence that when she moved to Texas in October, 1979, she moved with the children into the home of Rudy Gaubert, a man she had seen frequently during her marriage to defendant and with whom it could be inferred she carried on an affair during her marriage to defendant. There is evidence that plaintiff used vulgar profanity in front of her children and, on occasion, that she would violently shake and curse the older child. There is also evidence that plaintiff had "a bad temper."

There is evidence in the record that defendant's father and mother, who live approximately one mile from defendant, would help defendant at any time he felt it necessary in taking care of the children. There is evidence that defendant would furnish a stable home environment for the children.

The primary purpose in the determination of custody of children is to place the children in the best possible environment, given all available choices. *Riddick v. Riddick,* 497 S.W.2d 740 (Tenn.App.1973). Our review of the legally admissible evidence in this record supports a determination that the best possible environment for these children would be with the defendant father.

In view of our holding as to custody, plaintiff's third issue, "The Trial Court erred in failing to award to plaintiff as child support defendant's interest in the home of the parties," is pretermitted.

Plaintiff's fourth issue is as follows: "The Trial Court erred in failing to award plaintiff at least a one-half interest in the yacht jointly owned by the parties."

■ T.C.A. § 36–825 provides that the court having jurisdiction may "adjust and adjudicate the respective rights and interests of the parties in all jointly owned property, so as to preserve for each or either party, that portion of such jointly owned property as may be just and reasonable under the facts and circumstances of the case . . . ." A division of property under T.C.A. § 36–825 is not an award of alimony. Fault is not a factor to be considered in dividing jointly owned property. *Fisher v. Fisher,* 648 S.W.2d 244 (Tenn. 1983); *Edwards v. Edwards,* 501 S.W.2d 283

(Tenn.App.1973). In making an equitable division of property under this statute, there is a presumption that the ownership of the property is equal. *Holland v. Holland,* Tenn.App. (filed October 28, 1977, at Nashville).

The evidence in the record is that the yacht was purchased in June, 1977, for $22,500 and titled in the name of both plaintiff and defendant. A $1,000 down payment was made and for the balance a loan was procured from the United American Bank in Nashville.

There was some "$10,000 worth of renovations" made to the boat, making the total cost of the boat $32,500. The evidence is that plaintiff paid for the renovations out of her own personal funds and also made some $8,748 in mortgage payments.

Defendant argues that "[a] close reading of plaintiff's transcript citations shows that the yacht was a business enterprise, purchased from the funds generated by the business of the parties." We have closely read plaintiff's citations and the entire record, but are of the opinion that defendant's argument is not supported by the record. Even if it were, plaintiff would be entitled to some share of the yacht since it was purchased from funds of the parties. We are of the opinion that the Trial Court erred in awarding full ownership of the yacht to defendant. From the evidence in the record, plaintiff is entitled to a one-half interest in the yacht.

We next discuss plaintiff's fifth issue which is:

The Trial Court erred in failing to award the plaintiff's attorneys' fees incurred in obtaining child custody and support for plaintiff.

That the minor children are entitled to attorney's fees reasonably incurred in their behalf is without question. *Graham v. Graham,* 140 Tenn. 328, 334, 204 S.W. 987 (1918). In the awarding of attorney's fees in custody cases, the trial court is given wide discretion and this Court will not interfere in the exercise of that discretion in the absence of a clear showing of abuse. *Grant v. Grant,* 39 Tenn.App. 539, 541, 286 S.W.2d 349, 350 (1954).

In the instant case plaintiff had physical custody of the children at the time she filed for divorce and custody. The Trial Court allowed plaintiff to retain physical custody until the end of the school year at which time the Court stated it would determine which of the parties should have "permanent" custody. Subsequently permanent custody was awarded to defendant. From a review of the record, very little attorney time was expended on behalf of the children. We find that the Trial Court did not abuse its discretion in failing to award attorneys' fees arising out of the "temporary custody and support award to plaintiff."

Plaintiff's seventh issue is: "Whether the Trial Court erred in denying plaintiff's motion to reopen proof upon the ground of evidence newly discovered after the trial."

Sandra Hawkins was called as a witness by plaintiff. Mrs. Hawkins answered each and every question asked by plaintiff's attorney, including admitting that she had engaged in sexual intercourse with defendant after plaintiff and defendant had separated. At trial, she was asked nothing concerning defendant's drinking habits, his relationship with his children, or the condition of his home. After trial, plaintiff filed her motion, along with Mrs. Hawkins' affidavit, stating that Mrs. Hawkins had failed to testify to certain matters at trial, *i.e.,* defendant's drinking habits, that she had never heard defendant say he loved his children, that defendant did not maintain his home in a well-kept condition, etc.

All of these are matters about which plaintiff could have questioned Mrs. Hawkins at trial. Because plaintiff or her attorneys, after trial, may have talked with Mrs. Hawkins and learned additional information does not make this information "newly discovered evidence." However, even if it be classified as "newly discovered evidence," where a party fails to procure evidence which, with ordinary diligence, he might have procured, a motion for a new

trial for the purpose of introducing such new evidence may be properly denied. *Tipton v. Smith,* 593 S.W.2d 298, 302 (Tenn. App.1979). Here, plaintiff failed to use ordinary diligence and the Trial Judge properly denied the motion.

Plaintiff's eighth issue is: "Whether or not the Trial Court erred in not awarding plaintiff arrearage for back child support."

■ The Trial Court awarded temporary custody to plaintiff and $500 per month child support. The evidence is that defendant had failed to pay child support from May 20, 1981. Plaintiff sought the arrearage from May 20 to September 15, 1981, the date the Texas trial court acted upon plaintiff's custody petition.

Plaintiff had custody and had been awarded $500 per month as child support under a valid decree of the Fourth Circuit Court for Davidson County. The record shows that defendant was able to pay the child support but simply did not do so. The record reflects no valid reason for the Trial Court's failure to award the arrearage in child support. We hold that plaintiff is entitled to recover the arrearage from May 20, 1981 to September 15, 1981, in the amount of $1,916.25.

Plaintiff's last issue is: "Whether or not defendant should be required to pay plaintiff's fees for the services of her attorney on this appeal."

■ The services of plaintiff's attorney on appeal have been of benefit to the minor children in recovery of the arrearage of child support. The minor children are entitled to attorney's fees reasonably incurred in their behalf. *Graham,* 140 Tenn. at 334, 204 S.W. at 987. Therefore, on remand, the Trial Court shall set a reasonable attorney's fee for the attorney for the representation in recovery of the child support arrearage. *Evans v. Evans,* 558 S.W.2d 851 (Tenn.App. 1977).

The judgment of the Trial Court is affirmed in all respects, except that, on remand, a judgment will be entered against defendant for the arrearage in child support in the sum of $1.916.25; a judgment will be entered for plaintiff for a one-half interest in the yacht "Triana." Plaintiff and defendant shall own the yacht "Triana" as tenants in common with plaintiff having a one-half undivided interest in the yacht and defendant having a one-half undivided interest in the yacht. If the parties cannot enter into an arrangement to sell and buy the yacht between themselves, the yacht shall be sold and the equity will be divided equally between the parties.

The costs of this appeal shall be divided equally between plaintiff and defendant and the cause remanded to the Circuit Court for entry of a judgment in conformity with this opinion, for the collection of costs, and any further necessary proceedings.

CANTRELL and CONNER, JJ., concur.