IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 4, 2001 Session

## JENNY C. WALKER v. JAMES M. WALKER

**Appeal from the Chancery Court for Robertson County**
**No. 14672     Carol Catalano, Judge**

———————————————

**No. M2001-00087-COA-R3-CV - Filed November 2, 2001**

———————————————

After the parties separated, the husband borrowed a substantial amount of money to complete the renovation of marital property and to pay household expenses. The trial court divided the marital property pursuant to divorce, classifying the husband's post-separation loans as marital debt. The wife argues on appeal that the trial court erred in its classification and division of the post-separation debts. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN, J. and DON R. ASH, SP. J., joined.

Connie Reguli, Nashville, Tennessee, for the appellant, Jenny C. Walker.

Gregory D. Smith, Clarksville, Tennessee, for the appellee, James M. Walker.

**OPINION**

### I. DIVORCE AND PROPERTY DIVISION

James Michael Walker and Jenny Lee Coursey married on March 8, 1991. Two children were born to the marriage, but questions of custody and support, while disputed at the trial level, are not at issue in this appeal. The marriage was not a happy one, and each party allegedly engaged in acts of physical aggression against the other. At trial, Ms. Walker admitted that during the course of her marriage to Mr. Walker, she had an extramarital affair with a man who was married to another woman.

On May 27, 1999, the parties separated. Mr. Walker stayed in the marital home with the children, while his wife moved to an apartment near her paramour's home. Shortly thereafter, Ms. Walker filed a Complaint for Absolute Divorce, on the grounds of irreconcilable differences or

inappropriate marital conduct. Mr. Walker responded by filing an Answer and Counter-Complaint for Divorce. Following a hearing, the court issued a pendente lite decree which affirmed the husband's physical custody of the children.

The trial court conducted a hearing on the Complaint and Counter-Complaint on May 11, 2000. In the Final Decree of Divorce, entered on June 8, 2000, the court found there to be fault on the part of both parties, but granted a divorce to the husband on the ground of the wife's inappropriate marital conduct. Both parents were awarded joint custody of the children. The decree named Mr. Walker as the primary custodial parent and set a reasonable visitation schedule for Ms. Walker. Because of some past incidents, the husband was specifically warned that withholding visitation from his former wife could result in a change of physical custody. Ms. Walker was ordered to pay Mr. Walker child support of $820 per month, in accordance with the Tennessee Child Support Guidelines. No alimony was ordered, as the court found the earning capacity of the parties to be equal.

For the purposes of this appeal, the most important part of the trial court's decree was that portion of the property division that involved the marital home, a piece of real property purchased as an investment, and the extensive debts incurred after the parties' separation, much of which is related to the investment property. The court decreed that both pieces of realty should be sold and the mortgages paid off, with the net proceeds divided equally between the parties. Either party contributing to the payment of the mortgages after trial was to be reimbursed from the proceeds of the sale prior to division. The court ruled that all the debt incurred by the parties up to the date of trial was marital debt, and its decree divided those debts as follows:

> The Husband shall be responsible for the $10,746.00 debt owing to Citibank; his Fleet card, $4,172; Mr. Walton Walker, $31,188; and his part of the debt owing to Rooms to Go, $2,954. This is a total indebtedness of $48,790 and the Husband shall hold the Wife harmless from this debt.

> The Wife shall be responsible for the Discover card, $1,002.00; American Express, $637.00; MNBA, $5,735; Chase, $6,820.00; First USA, $6,280; Bank of America, $4,806; QVC, $285; Proffitt's, $820 and Paul Harris and her share of the Rooms to Go Debt, $1,170.00. This is a total indebtedness of $27,700 and the wife shall hold the Husband harmless from this debt.

Ms. Walker subsequently filed a Motion to Alter or Amend the Final Decree, which the trial court granted in part. The court's Amended Final Decree, entered December 13, 2000, recognized that the marital home had not yet been sold, and that Mr. Walker had continued to live there after the trial. The court ordered that rent of $1,400 per month be assessed against him, to be payable as a charge against any payments made on the mortgage for which he was otherwise entitled to be reimbursed. The wife subsequently filed a Notice of Appeal.

## II. A MOUNTAIN OF DEBT

In order to understand the wife's arguments on appeal, we must first examine the proof in regard to the parties' real property and their debts. One problem faced by the trial court (and by this court) is that the parties were not only deeply in debt, but they both did a very poor job of documenting their financial affairs. Prior to the parties' separation, Ms. Walker handled the parties' finances and was the primary user of the credit cards. The wife's primary complaint, of course, has to do with the husband's post-separation stewardship of financial resources.

There is no doubt that the two pieces of real estate owned by the parties were heavily encumbered prior to their separation. Their marital home in Goodlettsville, with a purported value of $193,000, had a mortgage on it with monthly payments of $1,389. A second encumbrance placed on the home was a $50,000 home equity line of credit with monthly payments of $734.

In 1998, Mr. Walker purchased a house in East Nashville that been damaged by a tornado, with the intention of renovating it and selling it for a profit. He paid $32,000 for the property, encumbering it by a first mortgage with monthly payments of $305, and a second mortgage with payments of $471. The costs of the project devoured resources at a frightening rate, many tens of thousands of dollars before the parties separated.

Between the time of the parties' separation and the divorce hearing, Mr. Walker took cash advances against his second mortgages totaling $9,000, increased the indebtedness on his Fleet Credit Card (which carried an interest rate of over 20%) by $3,000, borrowed $31,200 from his father, and borrowed $14,750 against his 401(k) retirement plan. The attorneys in this case referred to the home on more than one occasion as "the money pit."

As the trial court noted, however, after Ms. Walker left the marital home, she withdrew all support from the household. While a part of her paycheck had previously gone to help with the mortgages and other expenses, Mr. Walker had to pay all the mortgage payments (close to $3,000 per month) after she left, and all the children's expenses from his $52,000 annual salary. A substantial portion of the money Mr. Walker borrowed was used for these purposes.

## III. ARGUMENTS ON APPEAL

Ms. Walker argues on appeal that the trial court erred in classifying the debt incurred by Mr. Walker after their separation as marital debts. She calculates that if those debts were deemed to be his alone, and the remaining debt divided equally between the parties, she would be responsible for only about $16,000, instead of the $27,700 ordered by the court. As a corollary, she contends she should be given credit for the post-separation cash advances that Mr. Walker took against the two second mortgages, and that those advances should be subtracted from Mr. Walker's share before the net real estate proceeds are divided.

Ms. Walker also argues that the trial court erred in its valuation and division of the personal property, and that an equal division after a correct valuation would require a cash payment from the husband to the wife. We will examine both of these arguments in turn.

## A. THE POST-SEPARATION DEBTS

Both parties cite the pronouncements of this court in the case of *Goodman v. Goodman*, 8 S.W.3d 289 (Tenn. Ct. App. 1999) as guiding authority for our treatment of post-separation debt.

> "Like marital property, marital debts should be divided equitably, taking into consideration: (1) which party incurred the debt, (2) the purpose of the debt, (3) which party benefitted from incurring the debt, and (4) which party is better able to repay the debt. In the case of debt incurred between the separation and divorce, one spouse should not be held responsible for the debts the other spouse incurs unless the debts were for a marital purpose or for the joint benefit of the parties."

8 S.W.3d at 298. *See also Mondelli v. Howard*, 780 S.W.2d 769 (Tenn. Ct. App. 1989).

It is indisputable that the appellee was the party who incurred the post-separation debts at issue. The appellant notes that the spouse incurring the debt has the burden of proving that the debts were incurred for a marital purpose or for the joint benefit of the parties, and she argues that he simply failed to carry his burden of proving that she derived any benefit from the transactions.

The trial court deemed the improvement of the East Nashville property to be a joint venture of the parties, however, and we note that the only proof in the record as to the purposes for which the debt was incurred involved the improvement of marital property, and the payment of household and child care expenses. Both of these must be deemed to be marital purposes.

The final decree of divorce gave the wife one half of the net proceeds from the sale of the East Nashville house. Although Mr. Walker had not finished the renovations on the house at the time of trial, he had already received an offer of $149,000 on the property, which he declined. There was proof in the record that additional work to put the property in "primo" condition would increase its value to $230,000. Although there may be a question as to whether there will be any real profit on the house, there is no doubt that the wife will eventually receive a benefit from its sale.

During cross-examination of Mr. Walker, the wife's attorney questioned the husband's stewardship of the borrowed money by the use of a spreadsheet (prepared from invoices and bank statements given by Mr. Walker to his father) to show Mr. Walker's expenditures on the East Nashville property between August of 1999 and February of 2000. The spreadsheet (which is not in the record on appeal) apparently showed disbursements of only $15,253. However, as we noted earlier, Mr. Walker kept very poor financial records. For example, he paid his hired labor in cash, and didn't keep a record of disbursements to them.

While it may have been an effective trial technique to challenge Mr. Walker to explain the gap between the $15,253 documented as having been spent on the house, and the $54,950 he admitted borrowing after separation, the trial court did not regard his resulting confusion as an admission of some sort of misappropriation or unwarranted dissipation of borrowed funds.

We do not believe that sloppy or incomplete record keeping related to the renovation work should relieve Mr. Walker from the requirement of showing that borrowed funds were used in an appropriate way. The proof showed, however, that Mr. Walker became solely responsible for mortgage payments and household expenses after his wife left him in May of 1999. If we assume that she had previously paid half of the mortgage expenses, that would result in a shortfall of $17,400 for him between the date of separation and the date of trial. If we calculate the child support she didn't pay during that year (at the rate later ordered) we would find an additional shortfall of $9,840. If we add utility and other household expenses that may have been shared, the necessity of borrowing a substantial amount of money becomes clear, and the inference that the expenditure of borrowed money was for marital purposes is inescapable.

## B. THE MARITAL PROPERTY

The appellant argues that all the assets and debts of the parties were accumulated during their marriage of eight years, and that no factors under Tenn. Code. Ann. § 36-4-121 were presented by either party that would require an unequal division of the marital property. She concludes that the court was accordingly required to make an equal division of the marital estate. *See Salisbury v. Salisbury*, 657 S.W.2d 761 (Tenn. Ct. App. 1983).

Ms. Walker notes that the husband was allowed to retain his entire 401(k) plan with a total value of $28,403, while the wife's 401(k) was worth only $8,127. She observes that there was $6,000 worth of equity in the pickup truck that was awarded to the husband, while there was only $2,000 worth of equity in the Ford Mustang awarded to her. She also argues that he received a greater share of their other personal property, and she calculates that to equalize their respective shares, he should be ordered to pay her $35,964.50.

There are two things wrong with this argument. First, her calculations are based on the theory (which we have rejected) that the post-separation debt is Mr. Walker's alone. Since we affirm the trial court's ruling that it is marital debt, a good part of the inequality the appellant complains of is erased by the court's order that Mr. Walker be made responsible for $21,100 more of the marital debt than she is.

Secondly, Tenn. Code. Ann. § 36-4-121 charges the court with equitably dividing the marital property, and an equitable division is not necessarily an equal one. *King v. King*, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998); *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn.1996); *Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn.1988). But even where, as here, the trial court determines that it is equitable to divide the property equally, too mechanical an approach to equality can undermine the goal of equity. *Mondelli v. Howard*, 780 S.W.2d 769, 773 (Tenn. Ct. App. 1989).

Thus, for example, while it may be equitable to award each party the vehicle he is accustomed to driving, it is not necessarily equitable for the party receiving the more valuable vehicle to pay an offsetting amount to the other party, particularly in a situation where the financial resources of the parties are stretched thin. Similarly, a cash award to offset the difference between the values of two retirement plans might work an inequitable hardship on the party required to make up that difference, if neither party can gain access to the retirement funds without penalty until many years in the future.

Of course, the trial court has the power to order just such offsetting payments, where necessary to achieve an equitable result. But trial courts have broad discretion concerning the manner in which they divide marital property. *Wallace v. Wallace*, 733 S.W.2d 102 (Tenn. Ct. App. 1987). Their decisions are entitled to great weight on appeal and are presumed to be correct unless the evidence preponderates otherwise. *Mondelli v. Howard*, 780 S.W.2d 769, 772 (Tenn. Ct. App. 1989). We have thoroughly examined the record in this case, and we do not believe the evidence preponderates against the trial court's division of marital property. We believe the trial court divided the property equitably, and we affirm its decree.

## IV.

The judgment of the trial court is affirmed. Remand this cause to the Chancery Court of Robertson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant, Jenny C. Walker.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.