IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JANUARY 20, 2005 Session

## STANLEY DAVID KAHN v. RANDA LIPMAN KAHN

Direct Appeal from the Circuit Court for Shelby County
No. CT-003684-01      Robert A. Lanier, Judge

No. W2003-02611-COA-R3-CV - Filed June 6, 2005

This appeal arises out of a divorce between the parties.  In its decree, the trial court declared the parties were divorced, divided the marital property and the debts of the parties, ordered the husband to pay the entire balance of the guardian *ad litem* fees, named the wife the primary residential parent, and ordered the husband to pay wife child support.  The husband now appeals to this Court.  For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Affirmed in Part; Reversed in
Part and Remanded

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S,. and HOLLY M. KIRBY, J., joined.

Richard A.Gordon, Memphis, TN, for Appellant

Caren B. Nichol and Blake W. Bourland, Memphis, TN, for Appellee

**OPINION**

**Facts and Procedural History**

Randa L. Kahn ("Wife" or "Appellee") and Stanley D. Kahn ("Husband" or "Appellant") were married on May 9, 1982.  It was the first marriage for both parties.  Husband and Wife adopted two children during the marriage: Stephen D. Kahn ("Son") (d.o.b. 6/28/1991) and Emily D. Kahn ("Daughter") (d.o.b. 6/3/1993).  Though he has improved, Son previously exhibited behavioral problems which resulted in his suspension from school on two occasions.  He has been diagnosed with attention deficit hyperactivity disorder and takes medication for this condition as well as anxiety.  At four and a half months old, Daughter was diagnosed with cancer and received treatment at St. Jude Children's Hospital.  Husband and Wife alternated staying in the hospital with Daughter while she received treatment.Daughter no longer suffers from cancer and excels in school.

Wife holds a bachelor's degree in public relations and graphic design. She is now employed as a general manager for the Memphis Flea Market and earns approximately $65,000.00 per year. Husband attended college but never graduated. He has since worked in the area of photograph equipment repair. One such venture begun by Husband was a business called Stan's Photos, an unincorporated business. However, Husband ran up a debt of approximately $23,000.00 owed to the IRS for failure to pay an employees' withholding tax for the last three quarters before the business was shut down.[1] Though Husband's parents gave Husband the money to pay off the debt to the IRS, he did not do so. Additionally, during the marriage, Husband incurred a business loan of $30,000.00 with Morgan Stanley. Since the closing of Stan's Photos, Husband has created two new businesses: Photo Applications, which offers the service of optical equipment repair, and Graphic Applications, which concerns digital photography. Husband testified that thirty-five percent (35%) of his gross sales are the profits from his business. Husband's gross receipts were $218,214.00 for 2001 and $199,000.00 for 2002.

The largest asset of the marital estate is the marital residence, having a value of $220,500.00 with a mortgage of $95,621.00. Wife has paid the majority of house notes as well as the household expenses such as utilities and telephone. After Wife filed her complaint for divorce, Husband was ordered[2] to pay the bills associated with the marital residence. When he failed to do so in a timely manner each month, Memphis Light, Gas & Water threatened to cut off utility services to the home, and the telephone was cut off on four occasions. Additionally, Husband's grandmother gave Husband a parcel of land located on Summer Avenue (the "Summer property") around 1995 valued at $30,800.00.[3] Further, Wife has $60,796.03 in a 401(k) retirement plan.

Wife filed her complaint for divorce on June 15, 2001, citing irreconcilable differences as a ground for divorce.[4] Husband answered and counter-claimed for divorce citing irreconcilable

---

[1] We note that Husband admitted to attempting to use Daughter's cancer history to overcome the debt owed to the Internal Revenue Service.

[2] The trial court additionally ordered Husband to pay the bills for car insurance, pay Wife $400 per month in additional child support, and pay one half of the children's uninsured medical, dental, orthodontic, and ophthalmic expenses.

[3] The testimony at trial revealed that Husband has had difficulty staying current on the property taxes for the Summer property and that, at the time of trial, a tax lien existed on the property. At one point during the marriage, Wife discovered that the Summer property was about to be auctioned for failure to pay property taxes and alerted Husband before the property was sold. Further, in Wife's 14(D) Memorandum, which was admitted into evidence, it states that "Husband paid taxes on the [Summer] property from marital funds." Husband argues that the Summer property is separate property but does not appear to dispute that he used marital funds to pay the property taxes on the Summer property.

[4] Wife later amended her complaint for divorce by adding inappropriate marital conduct as a ground.

differences and inappropriate marital conduct as grounds.[5]  On July 9, 2002, the parties entered into a consent order appointing Patricia Worley the guardian *ad litem* for their children.  After a hearing, the trial court awarded the parties a divorce, divided the marital estate and debt, named Wife the primary residential parent for Son and Daughter, ordered Husband to pay the entire balance of the guardian *ad litem* fees in the amount of $4,154.00, and ordered Husband to pay child support in the amount of $1,526.00 per month.  Husband now appeals to this Court and presents the following issues[6] for our review:

> I.    Whether the trial court erred in its division of the marital estate; and
> II.   Whether the trial court erred when it ordered Husband to pay the entire balance of the guardian *ad litem* fees.

For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

## Standard of Review

We review a trial court's division of marital property *de novo* upon the record affording a presumption of correctness to the trial court's findings of fact.  *Dellinger v. Dellinger*, 958 S.W.2d 778, 780 (Tenn. Ct. App. 1997) (citing Tenn. R. App. P. 13(d); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984); *Dalton v. Dalton*, 858 S.W.2d 324, 327 (Tenn. Ct. App. 1993)).  A trial court is given wide discretion in the manner in which it divides marital property, and we give its decisions on appeal great weight.  *Id*. (citing *Wade v. Wade*, 897 S.W.2d 702, 715 (Tenn. Ct. App. 1994); *Wallace v. Wallace*, 733 S.W.2d 102, 106 (Tenn. Ct. App. 1987)).  The trial court's distribution of marital property is presumed correct unless the evidence preponderates otherwise.  *Id*. (citing Tenn. R. App. P. 13(d); *Wallace*, 733 S.W.2d at 107).

Additionally, we give the trial court broad discretion in the award of guardian *ad litem* fees.  *Townsend v. Bingham*, No. 02A01-9801-CV-00019, 1999 Tenn. App. LEXIS 226, at *18 (Tenn. Ct. App. Apr. 6, 1999) (citing *McKeehan v. McKeehan*, No. 02A01-9407-CV-165, 1995 Tenn. App. LEXIS 838 (Tenn. Ct. App. Nov. 21, 1995)).  Absent a clear showing of an abuse of discretion on the part of the trial court, we may not disturb the trial court's award of guardian *ad litem* fees on appeal.  *Id*. at *18-19 (citing *Salisbury v. Salisbury*, 657 S.W.2d 761, 770 (Tenn. Ct. App. 1983)).

---

[5]      Eventually, the parties agreed that grounds existed entitling them to a divorce.

[6]      Though the parties, in their briefs, argue over whether the trial court erred in setting the amount of child support owed by Husband to Wife, during oral argument, counsel for both parties conceded that this issue had been settled below and, as such, the issue is no longer before this Court.

## Marital Property Division

Husband argues that the trial court erred when it determined that the Summer property was "marital property"[7] and in its division of the marital estate. To guide Tennessee courts in making an equitable distribution of marital property, a trial court must consider the following factors:

(1) The duration of the marriage;
(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
(4) The relative ability of each party for future acquisitions of capital assets and income;
(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
(6) The value of the separate property of each party;
(7) The estate of each party at the time of the marriage;
(8) The economic circumstances of each party at the time the division of property is to become effective;
(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;
(10) The amount of social security benefits available to each spouse; and
(11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c) (2003). Further, the Tennessee Code defines "marital property" and "separate property" as follows:

(b) For purposes of this chapter:

(1) (A) "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up

---

[7] Though the trial court did not make an explicit finding that the Summer property was "marital property," it adopted Wife's Rule 14(d) Memorandum stating that the Summer property should be considered "marital property," and the trial court, in its final decree, "awarded" Husband the Summer property.

to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date. In the case of a complaint for legal separation, the court may make a final disposition of the marital property either at the time of entering an order of legal separation or at the time of entering a final divorce decree, if any. If the marital property is divided as part of the order of legal separation, any property acquired by a spouse thereafter is deemed separate property of that spouse. All marital property shall be valued as of a date as near as possible to the date of entry of the order finally dividing the marital property.

(B) "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed[8] to its preservation and appreciation, and the value of vested and unvested pension, vested and unvested stock option rights, retirement or other fringe benefit rights relating to employment that accrued during the period of the marriage.

(C) "Marital property" includes recovery in personal injury, workers' compensation, social security disability actions, and other similar actions for the following: wages lost during the marriage, reimbursement for medical bills incurred and paid with marital property, and property damage to marital property.

(D) As used in this subsection, "substantial contribution" may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine.

(E) Property shall be considered marital property as defined by this subsection for the sole purpose of dividing assets upon divorce or legal separation and for no other purpose; and assets distributed as marital property will not be considered as income for child support or alimony purposes, except to the extent the asset will create additional income after the division.

(2) "Separate property" means:

(A) All real and personal property owned by a spouse before marriage, including, but not limited to, assets held in individual retirement accounts (IRAs) as that term is defined in the Internal Revenue Code of 1986, as amended;

(B) Property acquired in exchange for property acquired before the marriage;

---

[8] The parties do not argue that the income or increase in value of the Summer property is marital property. Further, there is no evidence of any increase in value of the Summer property or that it produces income. The focus of the argument is on whether the Summer property itself is "marital property."

(C)  Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1);

(D)  *Property acquired by a spouse at any time by gift*, bequest, devise or descent;

(E)  Pain and suffering awards, victim of crime compensation awards, future medical expenses, and future lost wages; and

(F)  Property acquired by a spouse after an order of legal separation where the court has made a final disposition of property.

Tenn. Code Ann. § 36-4-121(b) (2003) (emphasis added).

In addition to the increase in value or income from separate property being considered "marital property" pursuant to section 36-4-121(b)(1)(B) of the Tennessee Code, property falling under the definition of "separate property" in section 36-4-121(b)(2) may be included in the marital estate for equitable division purposes pursuant to the doctrine of transmutation.  This Court quoted the following definition of transmutation with approval:

> [Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property.  One method of causing transmutation is to purchase property with separate funds but to take title in joint tenancy.  This may also be done by placing separate property in the names of both spouses. The rationale underlying both these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate.  This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed marital.  The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

*Batson v. Batson*, 769 S.W.2d 849, 858 (Tenn. Ct. App. 1988) (quoting 2 H. Clark, *The Law of Domestic Relations in the United States* § 16.2 at 185 (1987)).  Though Wife argues that the Summer property is marital property because she warned Husband of the possibility that the Summer property would be sold at an auction for falling delinquent in property taxes and that marital funds were used to pay the property taxes, there is no evidence in the record to support the finding that the Summer property itself, as opposed to any increase in value, is "marital property" subject to equitable division.  The Summer property was in Husband's name and given to Husband by his grandmother as a gift.  There is no evidence that the Summer property was intended to be "marital property." Further, we note that "[t]he determination of what is equitable must be viewed in light of all factors set forth in Tenn. Code Ann. § 36-4-121, and the property division *as a whole*." *See Wilson v. Wilson*, No. E2002-01636-COA-R3-CV, 2003 Tenn. App. LEXIS 357, at *5 (Tenn. Ct. App. May 19, 2003) (emphasis added).  Therefore, we hold that the trial court erred when it considered the

Summer property to be "marital property" and, as a result, remand this case for an equitable division of the marital estate.[9]

### Guardian *Ad Litem* Fees

Husband also argues that the trial court erred when it ordered him to pay the entire remaining balance of guardian *ad litem* fees amounting to $4,154.00.[10] As noted above, absent a clear showing of an abuse of discretion, this Court will not reverse a trial court's award of guardian *ad litem* fees. *Townsend v. Bingham*, No. 02A01-9801-CV-00019, 1999 Tenn. App. LEXIS 226, at *18-19 (Tenn. Ct. App. Apr. 6, 1999) (citing *Salisbury v. Salisbury*, 657 S.W.2d 761, 770 (Tenn. Ct. App. 1983)). In this case, neither party alone sought the appointment of a guardian *ad litem*, but rather, both parties entered into a consent order, appointing Patricia Worley and outlining the parameters of the guardian *ad litem*'s powers and responsibilities. After reviewing the entire record, we cannot say that the trial court abused its discretion when it ordered Husband to pay the remaining balance of the guardian *ad litem* fees. Therefore, we affirm the trial court's decision ordering Husband to pay the entire balance of the guardian *ad litem* fees.

### Attorney's Fees on Appeal

Finally, during oral argument, counsel for Wife requested this Court award Wife her attorney's fees incurred on appeal. We have previously noted that it is inappropriate for this Court to award attorney's fees on appeal when both parties are partially successful. *Houghland v. Houghland*, 844 S.W.2d 619, 623 (Tenn. Ct. App. 1992) (citing *Baggett v. Baggett*, 512 S.W.2d 292, 294 (Tenn. Ct. App. 1973)). Therefore, we decline to award Wife her attorney's fees incurred on appeal.

### Conclusion

For the reasons stated above, we affirm the trial court's order requiring Stanley D. Kahn to pay the remaining balance of the guardian *ad litem* fees. We reverse the trial court's division of the marital estate which included Stanley D. Kahn's separate property and remand for an equitable division of the marital estate. Costs of this appeal are taxed equally to Appellee, Randa L. Kahn, and Appellant, Stanley D. Kahn, and his surety for which execution may issue if necessary.

_____

ALAN E. HIGHERS, JUDGE

---

[9] Though the evidence in the record indicates that the Summer property is "separate property" and not subject to an equitable division between the parties, we note that, in equitably dividing the marital estate, a trial court must consider "[t]he value of the separate property of each party." Tenn. Code Ann. § 36-4-121(c)(6) (2003).

[10] Husband does not appear to challenge the reasonableness of the guardian *ad litem*'s fees.