IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 23, 2006 Session

## TAMMY KAY JOINER v. JAMES ALDEN GRIFFITH

Appeal from the Juvenile Court for Montgomery County
No. 98-235    Wayne C. Shelton, Judge

No. M2004-02601-COA-R3-CV - Filed on July 31, 2006

This bitter change of custody proceeding originated with Mother's filing of a Petition to Stay Visitation based upon concerns that the parties' youngest child had been potentially exposed to inappropriate sexual behavior while in Father's custody. Father counterclaimed for a change in custody based upon Mother's attempt to interfere with Father's visitation. Following a bench trial, the trial court found Mother's accusations unfounded, awarded Father joint custody, and decreased Father's child support. Mother asserts that the trial court erred by finding the circumstances had changed sufficiently to modify custody or child support. Since the outcome of the custody issue was dependent on the trial court's assessment of the credibility of the witnesses, we affirm the trial court's conclusion that there was a material change of circumstances. We, however, have concluded the trial court erred in setting child support, and remand that issue for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed in Part, Vacated in Part, and Remanded**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN, J., joined. PATRICIA J. COTTRELL, J., filed a concurring opinion.

Michael K. Williamson and Philip M. Mize, Clarksville, Tennessee, for the appellant, Tammy K. Joiner.

Rodger N. Bowman and Gregory D. Smith, Clarksville, Tennessee, for the appellee, James Alden Griffith.

### OPINION

James Alden Griffith (Father) and Tammy Kay Joiner (Mother) lived together from 1997 until 2001 during which relationship they had two children. In March of 2001, Father moved out due to a domestic dispute with Mother. Shortly thereafter, Mother filed a Complaint for Child Support and Other Relief. Mother was designated as the primary residential parent. A visitation schedule was established and Father was ordered to pay $4,000 per month in child support. Both

parties appealed and this Court ruled on that appeal in 2004.[1]  While that appeal was pending, the present issues arose, which were litigated in the trial court and are now before this Court.

The present dispute has its origins in May of 2003, when Mother first observed odd behavior in the parties' then four year old child, S.N.G.  Mother claims the child was "humping" furniture, grabbing at Mother inappropriately, and engaging in angry outbursts.  She spoke with Father regarding this behavior and her concern about S.N.G. sleeping in the same room as her half-brother and his friends during Father's visitation.[2]  Father advised Mother he would be more observant when the children were in his home.

Mother took S.N.G. to her physician in May 2003 because she had been exposed to "Fifth's Disease," a common childhood ailment.  While there, Mother asked the physician about vaginal irritation the child had been experiencing.  The physician diagnosed the vaginal irritation as "H Influenza," which could be contracted in numerous ways; some innocent, others not so innocent.

After seeing the physician in May, Mother took no additional action until she initiated a call in August, three months after learning of the H Influenza diagnosis, to schedule an appointment for S.N.G. with a therapist.  The child's first appointment with the therapist, Nancy Conley, was on September 8, 2003.  Over the course of several appointments, Ms. Conley became concerned due to statements by S.N.G.  The statement that concerned her the most was that a friend of S.N.G's half brother exposed his "peanuts" in her presence.[3]  Based upon this information, on October 20, 2003, Ms. Conley notified the Department of Children's Services of what she believed may constitute potential sexual abuse.

Several days later, Mother requested Ms. Conley write a letter to Mother's attorney summarizing Ms. Conley's assessment.  Upon receipt of the letter, Mother's attorney drafted an affidavit for Ms. Conley to sign which was to be used in support of a petition to stay Father's visitation.  The affidavit was mailed to Ms. Conley, she signed it and returned it to Mother's attorney.  On October 30, 2003, Mother's attorney filed the affidavit as an exhibit attached to Mother's Petition to Stay Visitation.  Father promptly filed a vigorous objection, contending Mother's petition was part of a series of unfounded attempts to interfere with Father's visitation, along with a Petition for Change of Custody.

---

[1]Father appealed, taking issue with visitation, child support, arrearages, and the court's failure to make findings of fact regarding the alleged domestic assault.  Mother appealed claiming the trial court erred by rejecting most of her claim for attorney fees.  This Court affirmed the trial court's determinations concerning child support and visitation, modified the offset against the arrearage owed for child support, and reversed and remanded Mother's request for attorney fees. *See Joiner v. Griffith,* No. M2003-00536-COA-R3-JV, 2004 WL 1334519, at *1 (Tenn. Ct. App. June 14, 2004), *perm. app. denied* (Tenn. Oct. 11, 2004).

[2] Father had custody of two children from a prior marriage, C.G. and K.G.  These children often had other friends spending the night.

[3]Nancy Conley testified that at some point in her counseling sessions with S.N.G. she confirmed that "peanuts" were boys' testicles.

An emergency hearing was held within ten days of the filing of Mother's petition. While the parties were waiting to be heard, Ms. Conley advised Mother and her attorney that the affidavit contained erroneous statements, which she discovered as she reviewed it in preparation for the hearing. No one advised Father, Father's counsel, or the trial court, of the errors in Ms. Conley's affidavit at that hearing. Moreover, neither Mother nor her counsel ever advised the trial court of the errors in Ms. Conley's affidavit.[4] It was not until Ms. Conley disclosed the errors during the five-day trial in July of 2004 that the court became aware of the errors in the affidavit.

A five-day bench trial was conducted in July 2004 on the competing petitions, at the conclusion of which the trial court judge found Mother's conduct constituted a material change in circumstances sufficient to modify custody. The trial court also found it in the best interest of the children that the parents share joint custody. Because custody was changed, which increased Father's parenting time significantly, the trial court found it appropriate to reduce Father's child support obligation to $860 per month. The trial court additionally denied Father's request to assess his attorney fees and costs against Mother.

Mother appeals both rulings, contending there was no material change of circumstance, thus, no justification to change custody, and without a change of custody there was no basis to modify child support. Father appeals the denial of his request to assess attorney fees and costs against Mother.

## STANDARD OF REVIEW

This court reviews custody and visitation decisions *de novo* with a presumption that the trial court's findings of fact are correct unless the evidence preponderates otherwise. *Kendrick v. Shoemake*, 90 S.W.3d 566, 569 (Tenn. 2002); *Nichols v. Nichols,* 792 S.W.2d 713, 716 (Tenn.1990). Moreover, appellate courts are reluctant to second-guess a trial court's determination regarding custody and visitation. *Parker v. Parker*, 986 S.W.2d 557, 563 (Tenn. 1999). This is because of the broad discretion given trial courts in matters of child custody, visitation and related issues. *Id.*; *see also Nelson v. Nelson*, 66 S.W.3d 896, 901 (Tenn. Ct. App. 2001). Custody decisions often hinge on subtle factors, such as the parents' demeanor and credibility during the proceedings. *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997). Accordingly, trial courts have broad discretion to fashion custody and visitation arrangements that best suit the unique circumstances of each case. *Parker v. Parker*, 986 S.W.2d 557, 563 (Tenn. 1999).

Furthermore, it is not the role of the appellate courts to "tweak [parenting plans] . . . in the hopes of achieving a more reasonable result than the trial court." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001). This is particularly true when no error is evident from the record. *Id*. Thus, a trial court's decision regarding custody or visitation will be set aside only when it "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Id*.

---

[4]Father and his counsel were not aware until it was disclosed in a deposition shortly prior to trial.

We review the record *de novo* with a presumption that the court's factual findings are correct, absent a showing that the evidence preponderates to the contrary. Tenn. R. App. P. 13(d); *see Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000); *Farrar v. Farrar*, 553 S.W.2d 741, 743 (Tenn. 1977). It is also well settled that the burden rests upon petitioner to prove a significant variance between the obligation applicable to his alleged current income and the original child support obligation. *Turner v. Turner*, 919 S.W.2d 340, 345 (Tenn. Ct. App. 1995). Broad discretion is afforded the trial court in its child support determinations. That discretion is bounded on all sides by the child support guidelines and should not be disturbed on appeal unless this Court finds in its *de novo* review that the evidence preponderates against that finding. *See Butler v. Butler*, 680 S.W.2d 467 (Tenn. Ct. App. 1984).

## MODIFICATION OF CUSTODY

Mother contends the evidence preponderates against the trial court's finding of a material change of circumstances that warranted a modification of custody. Finding the evidence more than sufficient to support the trial court's findings, we affirm the modification of custody.

Notwithstanding the importance of stability and continuity, intervening changes in a child's circumstances may require modifying an existing custody and visitation arrangement. Tenn. Code Ann. § 36-6-101(a)(1) empowers the courts to change custody "as the exigencies of the case may require," and courts will change custody when the party seeking to change custody proves (1) that the child's circumstances have materially changed in a way that could not have been reasonably foreseen at the time of the original custody decision, *see Smith v. Haase*, 521 S.W.2d 49, 50 (Tenn.1975); *McDaniel v. McDaniel*, 743 S.W.2d 167, 169 (Tenn.Ct. App. 1987), and (2) that the child's best interests will be served by changing the existing custody arrangement. *See Solima v. Solima*, 7 S.W.3d 30, 35 (Tenn.Ct.App. 1998).

In child custody and visitation cases, the welfare and best interests of the child are paramount concerns. *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). The determination of the child's best interest must turn on the particular facts of each case. *Taylor v. Taylor*, 849 S.W.2d 319, 326 (Tenn. 1993); *In re Parsons*, 914 S.W.2d 889, 893 (Tenn. Ct. App. 1995). This Court established general guidelines for making the determination of the child's best interest in *Bah v. Bah*, 668 S.W.2d 663 (Tenn. Ct. App. 1983). As the Court stated:

> We adopt what we believe is a common sense approach to custody, one which we will call the doctrine of "comparative fitness." The paramount concern in child custody cases is the welfare and best interest of the child. *Mollish v. Mollish*, 494 S.W.2d 145, 151 (Tenn. Ct .App. 1972). There are literally thousands of things that must be taken into consideration in the lives of young children, *Smith v. Smith*, 188 Tenn. 430, 437, 220 S.W.2d 627, 630 (1949), and these factors must be reviewed on a comparative approach:

> Fitness for custodial responsibilities is largely a comparative matter. No human being is deemed perfect, hence no human can be deemed a perfectly fit custodian. Necessarily, therefore, the courts must determine which of two or more available custodians is more or less fit than others. *Edwards v. Edwards*, 501 S.W.2d 283, 290-91 (Tenn. Ct. App. 1973).

*Bah*, 668 S.W.2d at 666. The trial court should also consider factors set forth in Tenn. Code Ann. § 36-6-106, which include, without limitation, the love, affection and emotional ties existing between the parents and child; the disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care; the degree to which a parent has been the primary caregiver; the importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; and the mental and physical health of the parents. Other significant statutory factors are evidence of physical or emotional abuse to the child, to the other parent or to any other person; the character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

The guardian ad litem and the social worker from the Mid Cumberland Community Services Agency both recommend the parents have equal time and joint custody with the children. The trial court found that Mother had demonstrated emotional instability and open hostility toward Father. Based on these findings, the trial court concluded it was in the children's best interests to change the current custody arrangement by giving Father joint custody with Mother. As the trial court explained:

> Visitation was suspended between James Alden Griffith and [S.N.G.] and then allowed only with supervision based on the allegation of [Mother] and the Affidavit filed in connection with that Petition. Said Affidavit was signed by Nancy Conley of the Rape and Sexual Abuse Center (RASAC). The Court finds that Nancy Conley, during this hearing, disavowed said Affidavit and the Court finds that Nancy Conley had disavowed said Affidavit soon after it was filed. The Court was not made aware of Nancy Conley's disavowing of the Affidavit until the hearing in this matter. This Court took action interfering with [Father's] visitation with his children based on the Petition and Affidavit. The Affidavit and the Petition was not prepared by the current attorney for [Mother], Carrie Gasaway.
>
> * * *
>
> The filing of a questionable Affidavit by [Mother] with the Court and the filing of a letter to the Governor of the State of Tennessee with the questionable Affidavit attached, after the allegations contained in the Affidavit had been disavowed by the Affiant, causes this Court to question the stability of the Petitioner. [Father's]

-5-

unwavering efforts to clear the allegations and the implications made towards him demonstrate a solid stability. [Father] submitted to days of testing and required the older sibling to [S.N.G.] to submit to any and all testing and questioning to address the allegations. The test of stability weighs heavily towards [Father].

* * *

The Court in making its finding takes into consideration recommendations of the Guardian Ad Litem and the recommendation of Mid Cumberland Community Services Agency which both recommended that custody be on a 50/50 basis.

The presumption of correctness applicable to a trial court's findings of fact pursuant to Tenn. R. App. P. 13(d) applies in child custody cases. *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984); *Whitaker*, 957 S.W.2d at 838. Based upon the foregoing, we find the evidence does not preponderate against the trial court's finding of a material change in circumstances warranting a modification of custody and the award of joint custody to Father and Mother. Accordingly, we affirm on this issue.

## CHILD SUPPORT

The modification of custody and significant change in the visitation schedule necessitate a modification of child support. Based upon the change in custody, the trial court reduced Father's child support obligation from $4,000 to $846 per month. Mother contends the trial court used an improper methodology to set child support. Finding Mother to be correct on this issue, we must vacate and remand for further proceedings on the issue of child support.

Father owns and operates a construction company, and his income fluctuates significantly year to year. To accommodate for the significant fluctuations in Father's income, the trial court employed a five-year average to determine Father's gross income. The trial court made a finding that Father's average income over the five-year period was $78,352 per year and determined Father's child support obligation pursuant to the child support guidelines would be $1,276 per month. The trial court, however, did not set support at that amount. Instead, it elected to take into consideration Mother's income. The court determined Mother's income was $1,750 per month and if she were to pay child support pursuant to the guidelines, her obligation would be $416 per month.

After determining the amount of child support each parent would have been obligated to pay pursuant to the guidelines, the trial court deducted the amount Mother would pay from the amount Father would pay. Based upon this methodology, the trial court set Father's child support obligation at $860 per month.

Significant changes to the child support guidelines went into effect on January 18, 2005 with the implementation of the "income shares" model. The trial in this case was conducted in July of 2004. Thus, the new "income shares" model is inapplicable to this case, and we are constrained, as is the trial court, to apply the pre-existing child support guidelines then in effect.

Pursuant to the Guidelines in effect in 2004, "the parent with whom the child(ren) live primarily will be referred to as the obligee and the parent with whom the child(ren) do not primarily live will be referred to as the obligor," Tenn. Comp. R. & Regs. 1240-2-4-.03(1) (2003), and child support was to be based on a flat percentage of the obligor's net income. Tenn. Comp. R. & Regs. 1240-2-4-.03(2) (2003). Thus, in 2004, an award of child support to an obligee parent was to be calculated based solely upon the net income of the obligor parent, and the obligee parent's income should not have been considered in the calculation. *Gallaher v. Elam*, 104 S.W.3d 455, 462 (Tenn.2003); *Gray*, 78 S.W.3d at 884. More significant to the matter on appeal, a comparative analysis of the parties' incomes was not appropriate prior to the adoption of the "income shares" model in 2005. *Gray*, 78 S.W.3d at 884.

The Permanent Parenting Plan entered by the trial court in 2004 designated Mother as "the custodian of the child(ren) solely for purposes of all other state and federal statutes which require a designation or determination of custody." Accordingly, even though the parents shared joint custody, she was entitled to receive child support according to the 2004 guidelines because she was designated as the primary residential parent. *See Gray*, 78 S.W.3d at 884 (holding only the primary residential parent may be awarded child support). Here, the trial court awarded the parents essentially equal parenting time. In situations where overnight time is divided more equally between the parents, the courts must make a case-by-case determination as to the appropriate amount of support. Tenn. Comp. R. & Regs. 1240-2-4-.02 (2003). That determination, however, may not include a comparative analysis of the parents' income. *See* Tenn. Comp. R. & Regs. 1240-2-4-.03(2) (2003).

Finding the trial court employed an improper methodology to set child support, we vacate the award of child support and remand the issue to the trial court.

### ATTORNEY FEES AND COSTS

We last discuss the issue of whether the trial court should have adjudged discretionary costs and Father's attorney fees against Mother. The trial court is given wide discretion in awarding attorney fees and costs, *Garfinkle v. Garfinkle*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996), and this court will not interfere in the exercise of that discretion absent a clear showing of an abuse of discretion. *See Salisbury v. Salisbury*, 657 S.W.2d 761, 770 (Tenn. Ct. App. 1983). Father has failed to carry his burden on this issue. We therefore affirm the trial court's decision concerning court costs and attorney fees.

## In Conclusion

The judgment of the trial court is affirmed in part and vacated in part. This matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against Tammy Kay Joiner.

_____
FRANK G. CLEMENT, JR., JUDGE